GEORGE W. BARKER, RICHARD H. HOES, ALVINZA FINNEY AND WILLIAM H. SIPPERLY *v.* THE TROY AND RUTLAND RAILROAD COMPANY, *and their trustees,* THE RUTLAND AND WASHINGTON RAILROAD COMPANY.

*Contract, performance and construction of. Damages. Stock payments, amount recoverable on refusal of. Reference. Costs.*

If a contract under seal is not performed within the time limited by the contract, but that time is extended by a parol agreemement, a recovery may be had, in assumpsit, for the performance of it within the extended time.

And a recovery may, under certain circumstances, be had for the work performed, before a full performance of the contract, where the part performed has been accepted by the opposite party, and the deficiency and the damages resulting therefrom are taken into consideration and deducted in ascertaining the amount.

Barker et als. *v.* T. & R. R. Company.

The provision, in a contract with a railroad company, for the construction of their road, to the satisfaction and acceptance of their engineer, has reference, as to its final acceptance, to the chief engineer.

The conversation and declarations of the parties at the time of entering into a written contract, can only be received for the purpose of construing the contract, when it contains ambiguous or equivocal terms, which are equally susceptible of two or more significations. But the subsequent acts of the parties, in the execution of the contract, are admissible to show how they understood, and what was their practical construction of it.

*Semble* that the fair construction of a contract to build a railroad between certain termini, at a specified price or rate per mile, according to certain specifications, among which the building of side-tracks and turn-outs is provided for, imports a mile of the road, without regard to the amount of side-track or number of turn-outs upon it,—and not a mile of track, which would require the length of the side-tracks and turn-outs to be added to that of the main track.

The fact that, under such a contract, by which the contractor was to receive monthly payments, according to the engineer's estimates of the work performed, he received and claimed no additional estimates or pay for the side-tracks and turn-outs, during the progress of the work, would seem to be conclusive, as a practical construction of the contract, against his right to anything additional on account of them.

The same rule in reference to a provision respecting extra work, similar to those in the contracts in *Thayer* v. *Vt. C. R. Co.*, 24 Vt. 440, and *Herrick* v. *same*, ante p. 673, recognized and applied in the present case.

The by-laws of the defendants provided that interest should be allowed on all instalments until the road was completed and in running order. *Held*, that the defendants could not recover of the plaintiffs, who had contracted to construct and complete the road by a specified time, the interest which accrued upon the instalments between that time and the time when the road was actually completed.

The plaintiffs, by their contract, were to procure the right of way and construct the defendants' railroad at a specified price per mile; they had constructed the road, but had not, in every instance, paid the land-owners damages: *held*, that the defendants, being directly liable to the land-owners, might retain the amount of that liability from the sum which by the contract would be due to the plaintiffs.

The plaintiffs, by their contract, were to receive in payment a certain proportion of the defendants' stock. Upon finishing their work they demanded their pay, claiming that their contract had been performed; this was denied by the defendants, and payment, on that account, refused. The market price of the stock, at this time, was 33 per cent. only of its par value. It being determined that the plaintiff was entitled to recover a sum less than the whole stipulated price, not upon a strict and literal performance of the contract on their part, but upon equitable grounds: *it was held* that, upon similar equitable grounds, their recovery, for that portion of their claim which was made payable in stock, should be limited to the market value of the stock at the time of their demand.

The reference of a cause, to be decided according to law, ordinarily disposes of all questions respecting the form of the action: the decision, which is to be made according to law, is regarded as having reference only to the merits of the cause.

Where two or more suits are brought by the same plaintiffs in interest, but in the names of different nominal plaintiffs, against the same defendants, and the entire amount claimed

is litigated at the same time in all, but is recovered in one only of the suits, and the others were brought only to secure and save the rights of the plaintiffs in interest, under any possible decision which might be made in the suit in which the recovery was had: *it was held* that, the plaintiffs would be entitled to recover the whole expense of the trial, &c., in that suit; and that in the other suits, which the plaintiffs then abandoned, the defendants would only be entitled to recover such costs as applied exclusively to them.

ASSUMPSIT. General counts. By the agreement of the parties, the cause was referred, and the referees reported the following facts in reference to those items of the account which were considered and passed upon by the supreme court.

On the 21st day of May, 1850, the plaintiffs entered into a written contract for the construction of the defendants' railroad, a copy of which contract the referees annexed to their report. The plaintiffs entered on its performance, and all their claims were for services and expenditures incurred in said performance,—the contract having never been rescinded, and the referees not finding any fraud in its procurement, or any such essential change in the work as to be an abandonment thereof.

The plaintiffs performed a part of said construction in the year 1850. On the 30th of January, 1851, Finney and Sipperly transferred, in writing, all their interest in the contract, to Barker and Hoes.

The plaintiffs had performed the larger part of the construction of said road before the 1st day of July, 1851, but had not completed it; and, so far as they had performed, they were paid for the same, by estimates from month to month, in cash and stock, agreeable to contract. After the 1st day of July, 1851, the plaintiffs proceeded in the construction of said road as before, and the defendants made no objection, and claimed no forfeiture on account of time, but, on the contrary, continued to pay as before. On the 26th day of July, 1851, a written lease of this road was executed to the Rutland & Washington Railroad Company. On the 12th day of March, 1852, Barker & Hoes assigned their interest in said road and contract, to Benj. W. Walkley. The road had been so far completed that the track was all laid before the 1st day of January, 1852, so that the same was in a condition to be run before the Rutland & Washington railroad was done or could be run. That road had its rails laid to join this road January 1, 1852, and in March, 1852, the Rutland & Washington Railroad Company,

under their lease, proceeded to run over and occupy this (the defendants') road, and have ever since so done,—a new lease having been executed between said companies, on the 17th of June, 1852, as a substitute for the former one. The Troy & Boston railroad, connecting with the defendants' road south, was not completed so as to be run to this road until after March, 1852.

The said Walkley, under his assignment from Barker & Hoes, in the spring and summer of 1852, proceeded to work on said road, in order to complete the same according to the plaintiffs' contract, and expended work thereon where directed by the defendants and their engineer, to the amount of $7,500, and, on the 2d day of September, 1852, claimed that the road was fully completed according to contract, and so informed the defendants, in writing, and claimed an acceptance thereof. On the 14th day of September, 1852, the defendants answered, in writing, that the road was not completed. On the 16th day of September, 1852, the Rutland & Washington Railroad Company, acting under their lease, accepted this road, as finished, and of this the defendants had notice, but still declined to accept. On the 18th day of September, 1852, the said Walkley demanded of the defendants payment for said road, as completed, so far as the same had not been paid, according to contract,—and the same was declined, the defendants insisting that the road was unfinished. The referees found that said road, and the plaintiffs' contract, was substantially finished and performed, at that time, except in those respects hereinafter mentioned; and that, the whole length of the main track of said road, as built by the plaintiffs, was 17 miles, $137\frac{6}{10}$ rods, which, at $20,000 per mile, was $348,787.50, and this sum they allowed the plaintiffs.

There was also constructed by the plaintiffs, side-track, or turn-outs, 175 rods, which, at $20,000 per mile, would be $10,937.50, which the referees disallowed, but submitted to the court, under the contract and the facts following. The plaintiffs claimed that this amount of side-track, or turn-out, should be considered as part of the road, and they paid therefor the same as main track, which the defendants contested. In making the monthly estimates and payments, the side-track was never claimed by the plaintiffs or reckoned by the defendants as a part of the length of road.

The plaintiffs claimed to recover several items in their account,

50

as being for extra work, and not covered by or included in their contract, which the referees reported that the plaintiffs, at no time while performing them, made any claim for, as extra work, and neither asked nor received any written order or agreement for the payment thereof, as extra; and the same was done and carried in with their other work, and entered in the monthly estimates of payments; and the parties did not, at the time, claim, allege or treat said work as extra work;—and that they, therefore, disallowed the charges, submitting them, however, to the court.

Before the referees, the defendants insisted that the plaintiffs could not recover, because the road was not completed *within the time* stipulated; and also on the ground that the plaintiffs had never completed the road, or fulfilled the contract, at any time, and that it yet remains unperformed, in the particulars following, to wit.

1. In relation to the fence, in reference to which it appeared in evidence that one William Fuller was appointed and employed by the defendants, among other things, to direct and superintend the erection of the fence, for which a plan was furnished by the defendants' engineer; and, under the supervision of said Fuller, it was erected according to his direction, by the plaintiffs' sub-contractors, whom the plaintiffs have paid therefor; the fence was not a legal fence, according to the law of New York, where it was situated; and if deduction should be made on that account, the same was deficient to the amount of $1,088.00: but the referees considered that the defendants should not be allowed to object to it.

2. That the road, as left by the plaintiffs, was deficient and unfinished, in many other respects; and the referees found, from the testimony, that it was so deficient, in all, to the amount of $1,893, which they allowed to the defendants.

The defendants also claimed that the plaintiffs neglected to obtain and pay for the right of way from several of the landowners, the cost of procuring which, would be $800. There was no proof that the defendants had paid these claims, but the referees allowed them to the defendants.

By one of the by-laws of the defendants, of which the plaintiffs had knowledge, the defendants were to allow their stockholders interest, at the rate of 7 per cent., on all instalments, until the road was completed and in running order. The defendants claimed, as

damages, the amount of interest by them paid to their stockholders, on their paid instalments, from July 1, 1851, to March 15, 1852, which amounted to $5,547.76. This was so paid according to said by-laws, and the defendants refused and declined to pay any interest for said time on stock issued to the plaintiffs, which would have been $5,182.36.

The defendants further claimed interest on the instalments of stockholders unpaid, which they claimed they could have charged them, had the road been completed July 1, 1851, amounting to $2,183.10. These claims the referees disallowed.

The defendants claimed that the plaintiffs were not entitled to recover, because the work had not been accepted by the defendants' engineer, and they read, in evidence, the deposition of Edward S. Broadhead, and insisted that his award, therein contained, was conclusive between these parties. It appeared that the said Broadhead was appointed the defendants' chief engineer, in May, 1851, for the term of six months. He was on said road at different times in this service, during that period, he then residing at Utica, N. Y., and he received therefor $500. Mr. Brinsmade was resident engineer, and so continued to the completion of the road. Said Broadhead became employed as engineer on railroads in Wisconsin, and resided at Milwaukie, and after the plaintiffs ended their work, he, on the defendants' application, came from Milwaukie, in April, 1853, and having given notice to the plaintiffs, proceeded to examine said road, and made his decision and award, as stated in his deposition. The plaintiffs did not attend before the said Broadhead, who awarded, with a specification of the items composing it, that the damages sustained by the defendants, from the failure of the plaintiffs to complete their contract by the time specified, were $19,372.72. The legal effect of said award, so made by said Broadhead, the referees submitted to the court.

The referees further reported that the market price of the defendants' stock, in September, 1852, was 33 per cent., and that they considered the plaintiffs entitled to interest on any balance found in their favor, from September 2, 1852, to the rendition of final judgment.

By the contract, the plaintiffs agreed " to execute, construct and " finish, in every respect, in the most substantial and workmanlike

"manner, and to the satisfaction and acceptance of the engineer "of said corporation, and to furnish, find and deliver all mate- "rials necessary for the construction of the road, the engineering, "grading, masonry, blasting, bridging, fencing, superstructure, turn- "outs with their fixtures, cattle guards and crossings, including "farm and cattle crossings and furnishing water, water tanks, &c.; "to furnish the right of way, including all grounds necessary for "wasting or borrowing, or for depots and other necessary buildings "and fixtures; in fine, to complete, in every respect, the part of "the Troy & Rutland railroad, lying between the village of Sa- "lem, from a point where it intersects the Rutland & Washington "railroad, at the depot in said village, and the point of its connec- "tion with the Troy & Boston railroad, south of the Hoosic river, "so that the road be ready for the cars, free of all expense to the "company, except the compensation hereafter provided, except the "building of depots and turn-tables, and agreeable to the require- "ments of the statute.

"And the said road shall be made and completed, as described "in the following specifications, and as above required, on or be- "fore the 1st day of July, in the year 1851.

    \*       \*      \*      \*      \*      \*      \*      \*

"Water tanks, turn-outs, cattle guards and crossings to be built "similar, and at least equal in point of workmanship and material, "to those now built upon the first class New England railroads, "and subject to the approval of the engineer.    \*    \*    \*

   \*    \*    \*    \*  "nor shall any claims be made or allowed "for extra work, unless the same shall have been done in pursu- "ance of written contracts or orders signed by the engineer; and "all claims for work done under such written contracts or orders, "or on any other account, shall be presented for settlement, on or "about the beginning of the month following that in which said "work may have been done, or at any other time within three days "after the engineer shall have demanded the same, and in case of "failure so to present them, the allowance of such claims shall be "discretionary with the engineer.    \*    \*    \*    \*    \*

"In condition of the fulfilment by the said parties of the first "part of the foregoing provisions of this contract, said Troy & "Rutland Railroad Corporation hereby promises and agrees that

" the said corporation shall and will, for doing and performing the
" work as aforesaid, pay or cause to be paid to the said parties of
" the first part, their heirs, executors, administrators or assigns, at
" the rate of twenty thousand dollars per mile, to be paid as fol-
" lows: one hundred and eighty thousand dollars in cash, to be
" paid as hereafter specified, and the residue in the stock of said
" company, to be issued in quantities bearing a relative proportion
" to the cash payments from time to time, as they shall be paid and
" payable, and at the same time.    And it is understood and agreed
" that all subscriptions to the stock of said company, to be paid in
" merchandize, land damages, ties, timber and other materials, shall
" be received and taken by said contractors, as and towards the
" cash payments to be from time to time made under this contract.
" And it is further understood and agreed that all payments are to
" be made by the company to the engineer, and for land damages
" as may be required, and charged to the contractors, and be esti-
" mated as so much towards the cash payments, from month to
" month, as they shall be made by said company.    The payments
" within the limits of this contract shall be made as follows: between
" the first and tenth day of each month after the commencement of
" the work, said engineer shall estimate the quantity of work done,
" and give a certificate of the same, and upon the presentation of
" said certificate to the treasurer of said corporation, nine-tenths of
" the amount then due for work specified in said certificate, shall
" be paid to the said parties of the first part, and the proportion of
" stock issued as aforesaid.        *        *        *        *        *        *
" And when the whole of the work hereby contracted for, shall
" have been accepted, agreeably to the contract, the balance due
" shall be paid to the said parties of the first part, their heirs,
" executors, administrators or assigns.    And the engineer shall be
" the judge of the quality and quantity of all the work herein speci-
" fied, and from his decision there shall be no appeal."

The county court, March Term, 1855,—POLAND, J., presiding,—
rendered judgment upon the report for the amount reported by the
referees.    Exceptions by both parties.

*Peck & Colby, Vail* and *Dillingham* for the plaintiffs.

*Merrill & Willard* and *Phelps* for the defendants.

The opinion of the court was delivered, at the circuit session in September, by

REDFIELD, CH. J.   I.  One. question, lying at the foundation of the action, is whether a recovery can be had without showing performance, according to the terms of the contract.   At common law, and by the law of New York, where this contract was made, and to be performed, the plaintiff cannot recover, upon an entire contract for labor, if he voluntarily abandon the performance, however much he may have done under the contract.   Nor can he recover upon the contract, in such case, for part performance, unless hindred from proceeding by the act of the other party.   Even the act of God will not excuse the performance of such a condition. And if the time of performance is extended, the original contract being under seal, the extension must also be under seal, to enable the party to recover upon the contract, after full performance, according to the enlarged time.   *Porter* v. *Stewart,* 2 Aiken's R. 417.   But if the time be enlarged in which to perform the contract, by consent of the parties, but by parol, the recovery may be had in assumpsit.   *Sherwin et al* v. *Rut. & Bur. Railroad Co.,* 24 Vt. R. 347.   That is the form of the present action, we suppose, although the writ is not copied.   The party might, in such case be entitled to recover, by way of *recoupment,* any damages sustained by the enlargement of the time of performance, unless the contract of enlargement, or the circumstances under which it was made, carried with them an implied waiver of all claim on that account.   This, we.think, must be regarded as disposing of all question as to the right to recover, 'at least a reasonable compensation, for what was done towards performance of the contract. And, in such cases, the original contract is regarded as forming the basis of the renewed or enlarged contract, unless it is expressly waived, or the work is agreed to be done upon so different a plan that the application of the original contract cannot be traced, which does not seem to have been the case here.   There seems no good ground to question the sufficiency of the facts reported by the referees, in the present case, to show consent on the part of defendants to the performance of the contract, after the time limited by its terms.

II. But a question is made whether a recovery can be had

before a full performance, according to the enlarged terms, inasmuch as there is no pretence that the defendant expected to accept of anything less than full performance, at some time, and the referees find a deficiency of $1,800, and more, and the *ex parte* award of Broadhead shows more than twice that deficiency. We think there are many reasons why this should not prevent a recovery.

1. The building of the fence, according to the instruction of Fuller, the only man the defendants employed to superintend its construction, and, according to the plan furnished by defendants engineers, and especially when it is considered that this was so done by sub-contractors, under plaintiffs, who have been paid by plaintiffs for the work, must, in every view, be an effectual estoppel upon defendants as to all claims for damages on account of any deficiency in the construction.

2. The other deficiency, we think, should be measured by the finding of the referees. Broadhead does not seem to have been in any sense chief engineer after the expiration of his employment for six months. The contract was to build the road to the satisfaction and acceptance of the defendant's engineer. This final acceptance must, no doubt, refer to the chief engineer, and so the defendants seem to have viewed the matter, by sending to Wisconsin to procure Broadhead to pass upon that question. But, it seems to us that, strictly speaking, the defendants had no such officer at the time the plaintiffs left the work, claiming they had finished it. For, although for many purposes, the resident engineer is to perform the subordinate offices of making estimates and plans from time to time, of necessity, as held in Herrick's case; yet the final acceptance of an entire road, could scarcely be understood as referable to any other than the chief engineer. And so the defendants viewed the case. But as they had no such officer, it must, of necessity, excuse the obtaining an award of acceptance before demanding pay.

3. The acts of the defendant and their lessees, (which for many purposes must be regarded as theirs,) seem to amount to a sufficient acceptance of the work, as far as it was done. After having leased the road, and commenced running it, all that could be claimed by defendants would be a deduction from plaintiff's claim, on

account of any deficiency in the work, which the referees allowed. This point is expressly decided upon great consideration in a case so precisely similar to the present as to admit of no substantial distinction. *Danville Bridge Co.* v. *Pomeroy,* 15 Penn. St. R. 151. The same thing, in principle, has been virtually decided in this state in numerous cases. *Booth* v. *Tyson,* 15 Vt. R. 515, *and cases there referred to.*

The form of the action, if any action will lie, which could be substituted for the present, by any amendment, in the power of the court, is not material, after a reference of the case, upon its merits, saving only a condition, that the referees shall dispose of the case, according to law, which is understood to refer only to questions arising upon the merits. *Hicks* v. *Cottrill,* 25 Vt. R. 80. *Spaulding* v. *Warren,* 25 Vt. 316, and cases there referred to.

IV. The claim for side-track, although one of some doubt, and of very considerable amount, we have not been able to find good ground for allowing. The testimony, as to what was said by either of the parties, at the time of entering into the contract, could not properly be received, to fix the construction of the contract, unless it were to define which of the two or more significations, the parties intended to attach to a strictly ambiguous or equivocal term. No such term is found in the present contract, which the testimony determines. The contract is to build a portion of defendant's railroad between certain points. Here is nothing equivocal, and to admit the declaration of the parties made at the time, is to add to the written contract.

The subsequent acts of the parties, in the execution of the contract are not liable to any such objection, and have always been admitted, to show how the parties understood their contract, and as a practical construction of it. And the fact that the plaintiffs made no claim for this side-track, amounting to more than $10,000 during the whole progress of the work, while they were receiving monthly payments, according to the estimates of the engineers, is very conclusive evidence to show how the plaintiffs viewed the matter at the time.

We think, too, that the fair construction of the contract itself is to build the road for so much, by the mile. This can import nothing less than by the mile of road. Not a mile of track, but a mile

of road.   And a mile of road is no more because it has more or less of additional side-track at stations and turn-outs.   And it is expressly stipulated, in the contract, that the plaintiffs shall build the side-tracks and turn-outs, &c. at stations.   If the contract had provided for double track, it would scarcely have been claimed that the plaintiffs could have demanded double the stipulated price *per mile.*   But the principle seems to be very much the same in regard to this side-track, which is stipulated for, but the whole road to be paid for by the mile.   Unless, then, this side-track adds to the length of the road, it cannot fairly be measured in estimating the sum due plaintiffs, as it seems to us.   If the plaintiffs had stipulated for pay for every mile of track, they would, no doubt, have been fairly entitled to measure the side-track and turn-outs. But I find no such stipulation, and I cannot convince myself that the side-track can fairly be said to add to the length of a railroad.

V.  The claims for the extra work in this case are so precisely similar in principle, and in their leading facts, to those made in *Thayer* v. *Vermont Central Railroad*, 24 Vt. 440 and *Herrick* v. *Same, ante* 673, that we deem it needless to occupy time.   They are expressly excluded by the very terms of the written contract.   And there is not the slightest reason to believe that either party supposed any such claims were to be made on either side, as the work progressed. This should be always regarded as a sufficient quietus to all such claims in any case, and especially in cases of this character.

VI.   The claim for interest paid stockholders, and for the failure to recover interest upon instalments due the corporation until the work was completed, which is the same thing in a different form of stating the same proposition, made by defendants, is quite too remote a damage to be fairly taken into the account, in estimating the precise damages sustained by defendants, as it seems to me. Or, to express myself more explicitly, it does not seem to be any damage at all.   The first is merely paying interest upon money paid in by stockholders, and which being on hand, may be supposed to produce the same interest, unless defendants are compellable to pay it out to plaintiffs for construction.

Now, so far as the money had been so paid out, before the enlargement of the time of building, it was done according to the

terms of the contract, and was known to the defendants at the time they consented to give further time to plaintiffs, and, therefore, any such claim as interest upon what they have already paid must be regarded as waived by the very extension of time. And the portion of money not yet due plaintiffs might be kept on interest until earned by them.

But what seems more conclusive to me than any other view, in regard to this claim, is, that it is a payment by defendants to themselves virtually, merely taking money out of one pocket and putting it into another. The corporation and the stockholders, in legal contemplation, are not identical, but in any equitable view they are the same. The interest of all the stockholders and of the corporation are, of necessity, identical. Paying interest to the stockholders is, therefore, merely lessening the stock unless it is earned, and as the plaintiffs held a large amount of this stock and received no interest, it was really lessening their stock. But if they have any counter claim on this account, or any claim for interest under the bye-laws, it cannot be made in this action. If the defendants have any claim for damage by reason of not having their road by the time stipulated, it must be on account of not being able to use it as soon as they otherwise might, and thus have secured rent or use. But it would seem from the report that the connecting roads were not so finished, that this road could be used to any purpose, if it had been finished earlier, and that no loss was sustained on that ground.

VII. The claim for money due for right of way was properly enough allowed, as the defendants are clearly liable for it, and if plaintiffs are also, by contract, and should hereafter be compelled to pay, they might recover the sum paid of defendants, as money paid for their use, the plaintiffs, thereafter, if liable at all, being merely sureties for defendants, as defendants had been to them before this allowance. The allowance will merely change the relation of the parties in that respect. And, as, by their contract, the plaintiffs were bound to have paid this money, we do not perceive that they have any just ground of complaint that the money is now allowed to be retained by defendants to exonerate themselves by paying it over instead of trusting to plaintiffs doing it.

VIII. The only remaining question arises in regard to the stip-

ulation, in the contract, to accept a portion of the price of the work in the stock of the defendant's company, which was worth only 33 per cent. at the time the work was finished.    It seems to us the most difficult question in the case.  And, with me, the greatest difficulty has been to determine whether the stock has become so due, either by lapse of time or a demand of payment, as really to amount to a sufficient refusal or omission to pay, to convert the claim into money.  For if the defendants, upon reasonable request, have declined paying the amount due in their stock, as stipulated, it would seem but reasonable they should pay the amount in money.

1. This is the general rule in regard to contracts payable in collateral articles, estimated in currency, and not delivered.

2. The stock of a corporation is but a certificate of such a sum being due the bearer.  And where the party stipulates to pay in his own paper, if he refuse, suit may be brought immediately, although the paper was to have been on time, if given.  But it was never supposed the party could reduce the money by showing his paper depreciated in the market.   This would be virtually giving the difference to the other stockholders.  This would be the rule which should be applied if defendants are wilfully in fault. If it were the stock of another company, no doubt, all which could be recovered is the value of the stock in the market.   Certainly, this is the general rule, in regard to stock.   And, perhaps, that rule should be applied to the stock of the defendants, if it appears they have not willfully and unreasonably refused to deliver the stock.

The case of *Boody* v. *Rutland & Burlington Railroad Co.* throws no considerable light upon the question, inasmuch as the *referees* in that case adopt the market price of the stock, to which the defendants did not object if liable at all to a money judgment for the stock, which they resisted, and which the court regarded as doubtful, but expressly declined to decide, because there did not enough appear in the report to show that the referees were wrong, thus leaving it finally to rest upon the decision of the referees, which is not objected to, as to the rule of estimating the value of the stock, but only as to the right to include that, in their judgment.

But the recovery here is not allowed upon strictly legal

grounds, upon the strict and literal performance of the contract on the part of the plaintiffs. It is rather upon equitable grounds that any recovery and apportionment of the contract is allowed for anything less than full performance. By the terms of the contract the defendants had a right to retain the tenth part reserved until full performance. And, although it has not been regarded as a strict condition precedent in some of the cases, *Danville Bridge Co.* v. *Pomeroy,* 15 Penn. 151, still it is a stipulation in the contract for the full performance of which the defendants had the right to insist, and for doing which they are not to be themselves regarded as in fault. The defendants, too, were justified in refusing to pay any deficiency in the work at the time of the demand, so that while we excuse the plaintiffs from full performance of their contract, as a strict condition precedent, and allow them to recover to the extent of what they had done, on the equitable ground, that they had in good faith attempted to fulfil their undertaking, and supposed they had done so, and only failed by mistake and misapprehension, which should not, under the contract, defeat the recovery *in toto,* but only subject to an equitable deduction for all damage sustained by defendants, it seems to us that it should form a part of this equity to the defendants not to be required to pay more for this stock even if it were their own than it was in fact worth, or could have been made to benefit the defendants.

As we now hold, the plaintiffs were, at the time of the demand, entitled to recover, upon equitable grounds, a sum less than the whole price. But they demanded the whole price, and the defendants refused. The demand itself was unreasonable. Is it certain a reasonable one would have met a similar fate? It has been held the demand must be reasonable to render the refusal unreasonable. *Jameson* v. *Ware,* 6 Vt. R. 610. As, therefore, the refusal of defendants seems to have been not altogether without good excuse, and in allowing an equitable recovery, in a case like the present, one of the first requirements seems to be, that no injustice shall be thereby visited upon defendants, it would almost necessarily follow that we should not suffer the plaintiffs to recover more for the work really done by them than they could possibly have realized, if they had been paid at the time, according to the contract. And, as we set up a basis of recovery upon equitable

grounds, and one not contemplated in the contract, we should not visit the defendants with a judgment which will make them worse off than if they had been allowed to pay the sum found to be due upon this equitable basis, after it is declared, according to the stipulations of the original contract. If this view is sound and equitable, and we see no reason to doubt it, the plaintiffs, as to the stock portion of their judgment, are entitled to the highest price the stock bore after the suit was commenced, and before the final judgment, or, if they choose, the court will strike out that portion of the amount reported, and require the certificates of stock still to be delivered, and if defendants refuse on reasonable request, enter up judgment for the full amount.*

Judgment reversed, and judgment to be entered, estimating the stock at 33 per cent, unless the plaintiffs choose the other alternative.

The Rutland and Washington Railroad Company, summoned as the trustees of the defendants in the above cause, having effects in their hands, the plaintiffs in interest, for the purpose of securing them, under any view which might be taken as to the proper persons to be made the nominal plaintiffs, caused two other suits to be commenced against the same defendants in each of which the said Rutland and Washington Railroad Company were summoned as

---

*Note.—In regard to the right of the defendants to now pay the stock, or its equivalent in value, and not to be compelled to pay its nominal value, it must in equity, as it seems to us, (and this case is now to be disposed of upon strictly equitable grounds, as far as the amount of recovery is concerned,) depend altogether upon the previous question, whether they have been in fault in not delivering the certificates of stock.

1. The time for full delivery, i. e., the full completion of the work, has not yet arrived.

2. By the terms of the contract, they had the right to retain one-tenth of the price until full performance.

3. Then at the time the demand of full payment was made, they were justified in refusing to comply with it, by the amount of actual deficiency, $1893, and something above $35,000 on account of the one-tenth. All this would justify a refusal to deliver stock to the amount of nearly $20,000 upon the whole contract, according to the terms of the contract itself, which is more than the court now find due the plaintiffs on the stock portion, about twice as much.

4. But by a sort of equitable view of the contract and the work done under it, we do find the plaintiffs entitled at the time of the demand, to receive a less sum than the whole balance claimed, amounting to some $20,000 in all, about one-half in the stock of defendants' company which was worth at the time and always since, two-thirds less than its nominal amount. If, then, we allow the plaintiffs to have judgment for the nominal amount of the stock, we give them two-thirds more of the funds of the company than they were then fairly entitled to have and take just so much out of the other stockholders without any just equivalent.

This, it seems to us, would be visiting an injustice upon one party, and giving the other an advantage, which we ought not to do, when the parties seem to have been just about equally in fault, and the plaintiffs only entitled to recover upon an equitable basis, by compensating defendants for all loss. We think, therefore, the most which the plaintiffs should recover for this part performance is the cash portion of the work done, and the value of the stock, as before stated, with the election to have the stock itself, if they prefer.

trustees—one of the suits being in the name of the first assignees, Baker & Hoes, and the other in the name of the second assignee Benjamin W. Walkley. The declaration in each of the suits was the same in form and in the amount claimed. All of the suits were entered and referred at the same time to the same referees, before whom but one hearing was had, which was intended to have reference to either or such of the cases as the legal rights of the respective parties rendered appropriate. The referees reported in the two cases last named, only by referring to their report in the first case. In rendering judgment for the plaintiffs in the above case, the county court rendered judgment for the defendants in each of the other cases, to which the plaintiffs excepted, but abandoned them upon a final recovery in the supreme court in the first case. In the taxation of costs, the defendants claimed that they should be allowed to tax a proportion of the costs in each suit in their favor, including one-third of the expense of the testimony, both by means of depositions and witnesses.

By the Court, (at the November Term, 1855.) We have had similar cases before the court in other counties. As these suits, which are now abandoned, were brought merely to save the plaintiff's in case of some exigency in regard to testimony or the ruling of the law, not anticipated, but always possible to occur, and have been kept along for similar reasons; we hold that all the expense of the trial which was or could be made available in the principal case in which the trial and recovery was had shall be taxed in that case. In the other cases the defendants will tax, of course, court and clerks' fees paid out, term fees, attorney fees and travel and such other costs as apply exclusively to those cases, as where depositions were taken exclusively for those cases, probably.

[The following decisions upon questions of practice, which were made by the supreme court during their last circuit, have been furnished to the reporter by one of the judges, and are here inserted in advance of the volume in which the other decisions of that circuit will be published.]