KELLY & BRAGG *v.* THE TOWN OF BRADFORD.

*Contract. Damages.*

Where a party has, without a voluntary abandonment of, or willful departure from, a contract, failed in a strict compliance with its provisions, but has substantially performed it, and has acted in good faith, intending to fulfill it according to its stipulations; and where, from the nature of the contract, the parties cannot rescind, and stand in *statu quo*, but one of them must derive some benefit from the labor or money of the other; in such case the party, failing to perform the contract strictly, may recover of the other, as upon a *quantum meruit*, such a sum only as the contract, as performed, has been of actual benefit to the other party, estimating such benefit by reference to the contract price of the whole work.

The method of estimating such benefit is, first, to deduct from the contract price such sum as will enable the other party to get the contract completed according to its terms; or, where that is impossible or unreasonable, such sum as will fully compensate him for the imperfection in the work and the insufficiency of materials; and second, to deduct also from the contract price whatever additional damages the breach of the contract has occasioned him. The remainder will be the amount which the party, who has failed in a strict compliance with the contract, will be entitled to recover.

Application of these principles to the facts in this case.

BOOK ACCOUNT. The auditors reported that the plaintiff's claim amounted to one thousand four hundred and seventy-two dollars, and was for constructing a road and bridge for the defendants under a written contract between the parties which specified in detail the length, width and mode of construction, both of the road and bridge, and also required that the whole work should be done in a thorough, workmanlike manner, and be completed to the satisfaction and acceptance of the defendant's selectmen, by the first of July, 1856, at which time in consideration of such completion of the work, the defendants agreed to pay the plaintiffs fourteen hundred and seventy-two dollars; that on the first of July, 1856, the plaintiffs claimed that they had substantially completed the work according to their contract, and called on the defendants for payment, but that the selectmen refused to pay them on the ground that the work was not performed according to the contract; that the selectmen had always refused to accept the road and bridge, but that they had both been left open, and used by the public, with the knowledge of the selectmen, up to the hearing before the auditors, except for a short period in the fall of 1856, while the defendants were taking down and reconstructing the bridge; that the plaintiffs in good faith intended and understood they had finished the road and bridge so as substantially to comply with the contract; but that in fact they did not do so, and that the road in several of the rock cuts was not so wide as the contract specified; that some of the *wharfings* or back walls of the road were not so substantially laid, and the track in other places not graded so low, as the contract required, and that in other places it varied from the prescribed line two or three feet; but that in regard to whether these variations existed,

Bragg et al. *v.* Town of Bradford.

the testimony was conflicting; that the bridge was defectively con-
structed, and not in conformity with the contract, in consequence
of the long timbers not being properly spliced, the effect of which
was that in September, 1856, after a large number of heavy loads
of stone had been drawn over it, these timbers were parted, and
the bridge, which was originally built *crowning*, was depressed,
and lost its arch, and became unsafe for travel; that the defend-
ants, regarding the bridge as unsafe, and supposing it to be nec-
essary, and for the best interests of the town, to take it entirely
down in order to make it safe, did so, and built a more expensive
and better bridge than the one which their contract with the plain-
tiffs required, and in doing so used the materials of the bridge
built by the plaintiffs, and expended two hundred and forty-six
dollars; that in fact, though it was difficult to repair the bridge
without taking it down, yet it might have been done, and the
bridge have been made safe and durable at an expense of one
hundred dollars.

The auditors further reported that the bridge, as constructed
by the plaintiffs, and the sum of one hundred dollars, would have
been as beneficial to the defendants in keeping a safe and con-
venient crossing of the river at that place, as a bridge constructed
in all respects according to the terms of the contract, and they
therefore deducted from the contract price, one hundred dollars,
by reason of the defect in the construction of the bridge.

In relation to the road the auditors also reported that one of
the variations from the specified line, being near where the road
entered the bridge, brought the course of travel in a better direc-
tion to enter the bridge than the original line; and that in some
instances the selectmen suggested alterations in the contract,
which were accordingly made by the plaintiffs. The auditors
also found that the road as constructed by the plaintiffs was less
beneficial to the defendants than it would have been, had the
contract been strictly complied with, in the sum of one hundred
and twenty-five dollars, which sum the auditors also deducted
from the contract price, and they reported in favor of the plain-
tiffs for the balance, being twelve hundred and forty-seven dollars.

Upon this report, the county court, at the June Term, 1859,
—BARRETT, J., presiding, rendered judgment for the defendants,
to which the plaintiffs excepted.

*Dillingham and Howard,* for the plaintiffs.

*Batchelder, Ormsby and Dickey,* for the defendants.

ALDIS, J.   The doctrine is firmly established in this State,
that where a contract has been substantially though not strictly
performed—where the party failing to perform according to the
terms of his contract has not been guilty of a voluntary aban-
donment or willful departure from the contract, has acted in good
faith, intending to perform the contract according to its stipula-
tions, but has failed in a strict compliance with its provisions,
and where from the nature of the contract and of the labor per-
formed, the parties cannot rescind, and stand in *statu quo,* but
one of them must derive some benefit from the labor or money
of the other—in such case the party failing to perform his con-
tract strictly may recover of the other, as upon a *quantum meruit,*
for such a sum only as the contract as performed has been of
real and actual benefit to the other party, estimating such bene-
fit by reference to the contract price of the whole work.   This is
a relaxation from the strictness of the ancient law, standing upon
the solid grounds of necessity and equity, but to be guarded with
care lest in its application it should tend to relax or impair the
obligation and faithful performance of agreements.

I.  The party must have intended in good faith to comply with
the terms of the contract.   The spirit of the contract must be
faithfully observed, though the very letter of it fail.   Hence a
voluntary abandonment of the agreement, or a willful departure
from its stipulations, are not allowed.   Still if the contract is
substantially kept—a failure in minor particulars, though plainly
ascertainable and patent to observation, if consistent with good
faith, if not wanton or willful,—will not prevent a recovery upon
the *quantum meruit.*   Illustrations of the rule and its application
abound in our reports.   *Dyer* v. *Jones,* 8 Vt. 205, is a leading
case.   There the contract was for the clearing of land and the
manner of doing the work particularly specified.   It was not
done as agreed, and the plaintiff claimed it was done so as to be
of no value to him.   But the auditor found that the defendant
" deserved to have for the work " about half price, and for this
he was allowed to recover.   *Gilman* v. *Hall,* 11 Vt. 510, is the

case of the stone-wall,—agreed to be built four and a half feet high, but twenty-four and a half rods out of forty were not four and a half feet high. The court held that the contract was substantially performed, the labor for the permanent benefit of the defendants, and as the failure did not appear to be "*from design*" the plaintiff might recover on *quantum meruit.* It is obvious that the failure in this case was one that was easily ascertainable and open to observation. It was also easily capable of compensation. *Brackett* v. *Morse,* 23 Vt. 554; *Morrison* v. *Cummings,* 26 Vt. 486; *Hubbard* v. *Belden,* 27 Vt. 645; *Barker et al.,* v. *The Troy & Rutland R. R. Co.* 27 Vt. 780; *Swift* v. *Harriman,* 30 Vt. 607; *Kettle* v. *Harvey,* 21 Vt. 301, are cases which illustrate the extent and limitations of the principle.

II. The principle applies only in cases where the contract can not be rescinded, but from its nature the labor performed under it by one party must enure to the benefit of the other, and where it would be inequitable for the party benefitted to so retain it without making compensation.

III. The rule by which compensation is to be made for the partial performance of the contract, protects and preserves all the rights of the party claiming a strict performance.

The party failing to perform can only recover such a sum as his labor has benefitted the other party. Had he strictly and literally kept his agreement, he would have been entitled to the contract price. Failing in this—1st, he must deduct from the contract price such a sum as will enable the other party to get the contract completed according to its terms;—or, where that is impossible or unreasonable, such a sum as will fully compensate him for the imperfection in the work and the insufficiency of materials, so that he shall in this respect be made as good pecuniarily as if the contract had been strictly performed; 2d. The party failing to perform must also deduct from the contract price whatever additional damages his breach of the contract may have occasioned to the other. In many cases these damages would be considerable; in others they might be nothing.

It is only by considering both of these elements, that we can ascertain the benefit which the one may have derived from the labor of the other, when measured by the contract and the contract price.

Deduct all these damages from the contract price, and the remainder is the benefit which the defendant derives from the part performance of the contract.

The rule of damages has not always been thus fully stated,—although the result of the rule has in the respective cases been the same.

In the leading case of *Dyer* v. *Jones*, Judge REDFIELD has expressed the measure of damages, which the plaintiff may recover, as " so much only as the labor is worth to the party who must have the benefit of it." This language has been followed in many of the cases.

Thus BENNETT, J., in *Gilman* v. *Hall*, says : " The defendant must render an equivalent for the benefit received."

And REDFIELD, J., again in *Brackett* v. *Morse*, says : " Stipulations on the part of the plaintiff are always regarded as independent whenever they can be fairly compensated by damages deducted from the actual benefit received. In other words, the plaintiff is allowed to recover according to the actual benefit received by the defendant, not the market value of the service or commodity received by him."

In a more recent case, *Barker* v. *The Troy & Rutland R. R. Co.*, 27 Vt. 780, he expresses the rule thus : " We allow the plaintiffs to recover to the extent of what they have done, subject to an equitable deduction for all damage sustained by the defendants " The forms of expression vary somewhat, but the idea as applied to the cases, is the same.

Applying these principles to this case, we think that the auditors do not find that there has been any want of good faith on the part of the plaintiffs in performing their contract, any voluntary abandonment or willful departure from its provisions. They say, " the plaintiffs in good faith intended and understood they had finished the road and bridge so as substantially to comply with the contract."

It is objected that other facts found by the auditors cannot be reconciled with this general finding. By the contract, the road was to be built sixteen feet wide and upon a line staked out by the selectmen— it varies from that line in some places two or three feet — in some places it is not so wide in the rock cuts as stipulated in the contract. It is said these facts were ascertain-

able by mere measurement, and must have been known to the plaintiffs. The same objection was urged in *Gilman* v. *Hall*, as to the height of the stone wall, but was not sustained. Here, however, it is said by the auditors that the testimony was conflicting as to the line staked out, and as to the cuts and fills and their grade—and that the plaintiffs claimed that the selectmen had from time to time directed some alterations in the contract; and that a divergence of two or three feet from the line near where the road enters the bridge, brings the course of travel in a better direction to enter upon the bridge. It is obvious that whether the departure from the terms of the contract was willful or not, must depend upon all the facts in the case as derived from a consideration of all the circumstances and the conflicting testimony. We find no facts in the report which would justify us in overruling the finding of the auditors. As to the bridge, the defect does not appear to have been discovered till some time after it was completed, and had been subjected for months to severe trials of its strength.

So the contract appears to us to have been so far performed in substance as to preclude the idea of a willful departure from its terms, and to justify a recovery by the plaintiffs.

The failure in the bridge was in the interlocking of the long timbers or chords. They do not appear to have been put together with sufficient strength and thoroughness of workmanship to bear the strain that was to come upon them. This defect would not at first be apparent. After the bridge had been used and subjected to severe tests by the drawing of heavy loads of stone over it, the defect began to appear. In the outset a slight additional expense would have probably remedied the insufficiency, but after the arch by use for some six months had become depressed to a level, the expense of restoring it and making it as safe and durable as the contract required, was much more. It seems to us that a failure in this point, clearly not from design, but rather the misjudgment and misfortune of the plaintiffs, should not subject them to a total loss of their labor. So severe a rule would hardly be consistent with a reasonable regard for the infirmity of human nature, and for that liability to mistake and failure, which attends upon the best efforts of wise and skillful men.

The defects in the making of the road seem to have been of still less significance; a divergence from the exact line staked out by the selectmen, but not thereby appearing to work any actual inconvenience,—insufficiency in the construction of a bank wall—imperfections in making the road narrower than the contract required in some places, and in not bringing it to the exact grade specified. But since the plaintiffs claimed the road as completed, it has been used by the public, and these defects do not seem to have impaired its use or convenience, or to have occasioned actual damage to any one. They affect its utility, convenience and durability in the long run, and so far the plaintiffs should clearly respond for them and pay the damage which results. Equity requires that the damages arising from such breach of the contract should be ascertained and deducted from the contract price,—but not that they should work a forfeiture of all the plaintiff's labor and expense.

In all respects, therefore, we think this comes within the application of the general doctrine that the plaintiff may recover as upon the *quantum meruit.*

II. It is claimed by the defendants, that the auditors have adopted an erroneous measure of damages; that they have not gone upon the basis of ascertaining how much the plaintiff's labor has benefited the defendants, having reference to the contract and the contract price;—but have substituted an estimate of the value of the plaintiffs' labor and expenses in connection with some theory of their own, as to a bridge and road which they think will be sufficient, and as beneficial for the defendants and the public, without regard to that road and bridge which the contract specifies. This involves solely a question as to the construction of the report, and the intention of the auditors.

As to the bridge,—they deduct one hundred dollars from the contract price by reason of the defective bridge, and say that the bridge as built and one hundred dollars would be as beneficial to the defendants, in keeping a safe and convenient crossing of the river at that point, as a bridge constructed in all respects according to the terms of the contract. We think this form of expression was adopted by the auditors in order to bring their finding within the language of the decisions in this State, which define the rule of damages in such cases. Thus in *Jones* v. *Dyer*, and

in other cases, the rule is said to be — that the plaintiff shall recover only that sum which the plaintiff's labor benefits the defendant, and no more.   Had they said merely that the bridge as built and one hundred dollars is as beneficial to the defendants as a bridge built according to the contract, no one could fairly question but that the true meaning of such a phrase would be — that the plaintiffs' labor benefited the defendants to the amount of the contract price less one hundred dollars.   The interposition of the clause " as beneficial to the defendants in keeping a safe and convenient crossing of the river at that point," &c., does not, we think, alter the sense, though it doubtless gives color to the impression that they may have had some other mode of crossing the river, in their minds, than the bridge, as specified in the contract.

The other parts of the Report, which allude to the bridge, and the expense and manner in which it might have been repaired, strengthen the construction we have given to the Report.

As to the road, we think their finding was plainly intended to be modelled upon the decisions, and to have direct reference to the rule as there set forth.   They say " the road as constructed by the plaintiffs was less beneficial to the defendants than it would have been had it been made strictly up to the contract, in the sum of one hundred and twenty-five dollars," which they also deduct from the contract price.   This, critically speaking, is not directly saying that it was as beneficial as the contract price, less one hundred and twenty-five dollars.   It is a negative pregnant ; it means that, and the idea is not to be misunderstood.   It would be hypercritical to construe it otherwise.

In *Jones* v. *Dyer*, the auditor reported that the plaintiff " deserved to have such a sum for his work," and that was construed as meaning, " what his work was worth to the defendants." Here the language is far more explicit.   It would have been difficult for the auditors to have found exact sums, and said the bridge as built was worth that sum to the defendants — the road as built was worth that sum to the defendants ; for it was difficult, if not impossible, to separate the cost of the one from the cost of the other.   Hence they took another mode of arriving at the same result.   They say the bridge and one hundred dollars

would be as good to the defendants as the contract,— the road and one hundred and twenty-five dollars, would be as good to the defendants as the contract. Deduct two hundred and twenty-five dollars from the contract price, and the remainder is what the plaintiffs' labor is worth to the defendants The whole context of the report shows this is what they have intended to report and we should be doing them injustice to construe the report, otherwise.

Judgment reversed, and judgment for the plaintiffs on report.