# FIRST CONGREGATIONAL MEETING HOUSE SOCIETY

v.

# TOWN OF ROCHESTER.

MAY TERM, 1894.

*Acceptance of lease and occupation under binds lessee for performance of conditions. Assumpsit. Repairs. Charge of court. Evidence.*

1. A lessee, by accepting a lease under seal and entering into the occupation of the premises, becomes liable for the performance of the conditions of the lease, although the same is not signed by him.

2. The action against such lessee for failure to perform the conditions of the lease would be assumpsit, for as to him it is not a sealed instrument.

3. The plaintiff leased to the defendant the right to occupy the basement of its meeting house upon condition that it should pay one-third of certain changes to be made then (1849) and should bear one-third of the "after repairs of the outside of said house and belfry." *Held*, that this included repairs to the entire belfry both outside and inside, and that the defendant might be charged with one-third the expense of wholly reconstructing the belfry in a new place if that was reasonably necessary.

4. The defendant having, under the lease, entered upon the use of the belfry as reconstructed, could not dispute its liability to pay its proportion of the expense of reconstructing it.

5. It was not error for the court to tell the jury that they were to be closely governed by the charge.

6. The action of the defendant's selectmen in reference to the reconstruction of the belfry might properly be considered as bearing upon the necessity of that reconstruction, but would not be conclusive upon the town.

Assumpsit for one-third the expense of certain repairs upon the plaintiff's meeting house. Plea, the general issue. Trial by jury at the May term, 1893, Windsor county, MUNSON, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts. The opinion states the case.

*Dillingham, Huse & Howland* and *E. H. Edgerton* for the defendant.

Assumpsit would not lie upon the lease, that being an instrument under seal. *Gould* v. *Thompson*, 4 Met. 227; *Codman* v. *Jenkins*, 14 Mass. 83; *Volentine* v. *Godfrey*, 9 Vt. 186, 189; *Warren* v. *Ferdinand*, 9 Allen 357; *Burnham* v. *Roberts*, 103 Mass. 379.

The plaintiff could not recover the expense of rebuilding the belfry in a new place, for that was not a repairing. *Todd* v. *Inhabitants of Rowley*, 8 Allen 51, 58; 20 Am. & Eng. Enc. of Law, 1039; *Douglass* v. *Conn.*, 2 Rawle (Pa.) 264; *Stephens* v. *Milnor*, 24 N. J. Eq. 358; *Darley* v. *Farrow*, 1 McCord (S. C.) 517; *Noye* v. *Noezel*, 50 N. J. L. 525; *Trescott* v. *Diamond Rock Boring Co.*, 51 L. J. Ch. 261.

*W. E. Johnson* and *Hunton & Stickney* for the plaintiff.

Assumpsit would lie for the after repairs. *Hinsdale* v. *Humphrey*, 15 Conn. 231; *Johnson* v. *Muzzy*, 45 Vt. 419; *Goodwin et al.* v. *Gilbert et al.*, 9 Mass. 510, 513; *Burnett* v. *Lynch*, 5 B. & C. 589; *Gale* v. *Nixon*, 6 Cow. 445; Com.

Dig. Cov. A., 3 ; Sheppard's Touchstone, 118 ; *Rogers* v. *Eagle Fire Co.*, 9 Wend. 618 ; *Huff* v. *Nickerson*, 27 Me. 106, 113 ; 1 Smith's Lea. Cas. (Ed. 1866), pp. 94, 107 ; Wood, Land. & Ten., 642-644 ; *Sherman* v. *Champlain Transp. Co.*, 31 Vt. 178 ; *Buck* v. *Pike*, 27 Vt. 529, 532.

ROSS, C. J.   I.   The defendant's exceptions as to the admission of the lease in evidence, to the refusal to order a verdict in its favor, and to the refusal to comply with its requests, numbered one to seven inclusive, concentrate in the contention, that, on the proof, the plaintiff did not entitle itself to maintain assumpsit.   The first count of the declaration is special assumpsit to recover of the defendant its proportion of certain repairs, as fixed by a written lease, of the plaintiff's meeting house and grounds, executed March 6, 1849.   The lease is defectively executed by the plaintiff, but it was stipulated on the trial, that the trial should proceed the same as it would if the lease had been properly executed. The lease, under this stipulation, is to be treated as properly signed, sealed and acknowledged by the plaintiff.   It is a deed poll.   It is not in form an indenture, and is neither signed nor sealed by the defendant.   By taking possession under it the defendant accepted the lease and became bound to carry out and perform those provisions of it which rested upon it to perform.   Such acceptance did not make the lease an instrument under the seal of the defendant.   In law it was similar to, and no more than, a written acceptance of its provisions, signed by the defendant, but not under its seal.   As to the defendant, such written acceptance would make the whole instrument unsealed on its part.   The defendant stands related to the lease, like parties to an instrument executed under the seal of each, on which the time of performance has been extended by parol, or by writing not under seal.   In such case covenant will not lie, but assumpsit will.   *Sherwin* v. *Rut. & Bur. R. R. Co.*, 24 Vt. 347 ;

*Barker* v. *Troy & Rut. R. R. Co.*, 27 Vt. 766; *Smith* v. *Smith*, 45 Vt. 433; *Johnson* v. *Muzzy*, 45 Vt. 419.

In regard to the items sought to be recovered the lease was fully executed by the plaintiff. In respect to these items it was not executory. But if executory recovery could be had under the first count. These exceptions are not sustained. The plaintiff could maintain this action of assumpsit if properly sustained by the evidence.

II. The defendant's eighth and ninth requests to charge, if good law in other respects, were not applicable to the case made by the first count of the declaration and evidence. The premises rented to the defendant were the basement story of the meeting house, which was deemed to be equivalent to one third part thereof, and the right to occupy the lot on which the house stood in common with the plaintiff. For the use of these premises the defendant agreed to contribute and did contribute, as stipulated in the lease, towards putting the premises in condition for such occupancy, and agreed that "the after repairs of the outside of said house and belfry" should be borne "one-third by the town and two-thirds by the society." The defendant contends that by "outside of said house and belfry" is meant the outside of the house and the outside only of the belfry as it then existed. We do not think that this construction would carry out the intention of the parties. The defendant by the lease, among other things, was given the exclusive use of the basement room, and the plaintiff of the room above the basement. Both were to have use of the bell. The whole belfry and outside of the house were for their common benefit. The sentence as framed is fully as capable of this construction as of the construction contended for by the defendant. When applied to the circumstances this construction effectuates the evident intention of the parties.

The repairs spoken of were to be made to these premises as a whole, and not to the body of the house as one separate

structure, and to the belfry as another separate structure. The defendant's eighth, ninth and twelfth requests are based upon the idea that the belfry was to be considered and treated as a separate structure, and that the repairs covered by the lease were only such as could be made to it as a separate structure. They are not applicable when the belfry is considered only as a part of the meeting house, like an outside entrance door, which might require to be wholly renewed, at the joint expense of the parties, properly to repair the house. Nor would the construction of the common entrance door at some other point than where it was originally located, if such removal was made necessary, by decay and by changes, to the proper enjoyment of the property in accordance with the provisions of the lease, be anything other than a repair of the building. The jury, on proper evidence and instructions, have found that the construction of the belfry at another point and where it was constructed, was a necessary and proper repair to the premises leased, that both parties might reasonably enjoy the rights conferred by the lease. The lease covered the grounds owned by the plaintiff on which the house stood. The defendant was given the right to occupy the grounds in common with the plaintiff. Erecting the belfry on these grounds was not a removal of it from the premises leased. It still was attached to and a part of the meeting house, as much so as when in its original location. The defendant also entered upon the use of the new belfry under the lease, and thereby became a tenant thereof under the plaintiff. Under these circumstances it is not in a position to dispute its landlord, the plaintiff's title to the premises now occupied by the belfry. These views dispose of the defendant's tenth and eleventh, as well as its eighth, ninth and twelfth requests.

III.   The construction which we have placed upon the lease makes the instructions of the court, requiring the jury to find that the construction of the new belfry was "a reas-

onable and necessary repair of the building in respect to its belfry," a proper one.   Nor do we think that the court's further instruction that the jury were to be " closely governed" by the charge, either improper or injurious to the defendant.   It was no more than telling the jury that they were to take the law of the case from the court, and be governed by it.   Nor does the addition of the reason given, that, if the instruction was wrong the defendant had its remedy in the supreme court, but if they disregard it, the plaintiff would be without remedy, make this instruction erroneous or injurious.   It was a presentation of one, of the many reasons, which might be given why the jury should be governed by their oath, and try the case according to the law given to them by the court.   There can be no presumption that a correct statement of the law, enforced by one of many valid reasons will work injury to either party.   The presumption is the other way.   No injury is made to appear.

IV.   The defendant had settled for the alterations made in 1849, had entered upon the use of the property under the lease, and thereby approved of and precluded itself from setting up those alterations as contributing to the necessity of the reconstruction of the belfry in 1890.   The court therefore properly instructed the jury, that the defendant's liability for the repairs of 1890 was to be determined without regard to "whether the work of the society in 1849 was properly or improperly done."   Nor can it be maintained, that "the action of the town's selectmen," its lawfully constituted agents in all general matters of the kind, was improper to be considered, as bearing upon the necessity of the repairs made in 1890, but not conclusive upon the town. While the selectmen were not the agents of the town to concede away its rights, their action in a matter properly within their care, was evidence, proper to be considered in determining the necessity of the repairs.   Such action tended to establish the then condition of the belfry and the practica-

bility of the reconstructing or repairing it in its then location.

The result is, we find no error in the action of the trial court.

*Judgment affirmed.*

Start, J., being engaged in county court, did not sit.