WILLIAM O. SHOUSE, Administrator of Louis Deardorff,
Deceased, Respondent, v. DAVID G. NEIS-
WAANGER, ET AL., Appellants.

**Kansas City Court of Appeals, June 8, 1885.**

1. MEASURE OF DAMAGES—CONTRACT TO DELIVER PERSONAL PROP-
ERTY—DIFFERENT WHEN USE IS KNOWN OR NOT KNOWN TO
VENDOR.—When a vendor contracts with a purchaser for the
delivery of materials for a building at a given time and place,
*without any knowledge* on his part of the purposes or use for which
it is contracted, the rule of law is well settled, that for the breach
of such contract on the part of the vendor, the measure of
damages would be the difference between the contract price and
the market value of such materials at the time and place of delivery
according to the contract. But when goods, or those of a par-
ticular description, are bargained for, for a special purpose, or for
delivery at a particular time and place, *in view of ulterior contracts*
or preparations, a failure of the vendor to perform may cause injury
which would not be compensated by that rule (*i. e.*, the difference
between the contract price and market value); but unless that pur-
pose, or the special circumstances from which, in case of default,
such consequential damages would proceed, *were communicated* to
the seller when the bargain was made, such damages, though they
may arise naturally and proximately from the breach of the con-
tract, are yet exceptional and cannot be said to have entered into
the contemplation of the parties. But if *at the time* of contracting,
*sufficient notice* be given of the intended use, or of other and
dependent plans, the vendor, on failure to deliver, or delaying
delivery, will be subject to such damages. 1 Sutherland on Dam-
age, p, 397, *et seq.*, and cases cited.

2. CONTRACT—PERFORMANCE OF, NOTWITHSTANDING ACCIDENT.—Where
a party by his own contract creates a duty or charge upon himself,
he is bound to make it good, if he may, notwithstanding any
accident by inevitable necessity, because he might have provided
against it by his contract. *Paradike v. Jayne*, Alleyn Rep. 23;
23 Carr 2; *Davis, Adm., v. Smith*, 15 Mo. 467.

APPEAL from Jackson Circuit Court, HON. JOHN K.
CRAVENS, Special Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action to enforce a mechanic's, or material

man's lien, and a claim of damages by defendants for failure on the part of plaintiff to deliver the material according to contract. There is no controversy as to the regularity of the steps taken to secure the lien. The whole controversy is as to the matter of the damages claimed by defendants, David and George G. Neiswaanger. Their answer, after tendering the general issue, set up that, on or about the first day of October, 1879, they were building a livery stable in Kansas City, on which the lien is sought to be enforced, on a lot owned by them; and requiring certain lumber for joists of extraordinary length, etc., for its completion, they applied to plaintiff, who was then a lumber merchant of said city, to obtain the same; that they then made a contract with him to deliver the same to them at plaintiff's yards in said city on or by the 15th day of October, 1879, to be used in said building then in process of erection; but the plaintiff failed, etc., to deliver the said joists before the 17th day of December, 1879. By reason of this failure the completion of the building was delayed two and one-half months. Defendants then plead that they were damaged thereby, in the loss of the rents of the building during that delay in the sum of $625; that relying on plaintiff's said undertaking they erected the walls of said building and laid the floors therein in part of the building; that said joists, being very long, were designed and necessary for laying the second floor of the building, and by reason of said delay the floors already so laid were greatly damaged by the rain and snows falling and remaining thereon, to the extent of $175; that the walls of said building being delayed in their completion were damaged by the weather to the extent of $600; and that by reason of said delay the plaintiffs had to pay their superintendent his salary, etc., making the aggregate of such losses the sum of $1600.00. The reply tendered the general issue as to the new matter pleaded in the answer. The cause was, by agreement of parties, tried before the Hon. John K. Cravens, as special judge, a jury being waived. On the trial, the plaintiff made proof of his account and the filing of his lien. The items in the

account show the materials were furnished on the following dates: October 13, 14, 20, 23, 25, 31, November 29, and December 17, 1879. The affidavit to this account was made by Deardorff February 14, 1880. Deardorff has since died and this cause is prosecuted by Shouse as his administrator.

The defendants' evidence tended to show that they were engaged in erecting this building about the first of October, 1879, when they applied to plaintiff to purchase the joists in question. The evidence tended to show that no such lumber was in said market, and that plaintiff had to order it, and have it prepared in a distant market; that the contract was, that plaintiff was to furnish this lumber for defendants at plaintiff's yard in Kansas City on or about the 15th day of October, 1879; and that he knew for what purpose defendants required the same, and that defendants were anxious about its prompt delivery. That on its failure to arrive at the appointed time the defendants made inquiry of plaintiff about the same, and complained of the delay: and that on going to the depot, on one occasion, defendants found that a part of the lumber was there, but plaintiff had not called for it. Their evidence tended to show that the damages claimed by them had ensued, and resulted from the delay in delivering this lumber.

Plaintiff claimed, and there was some evidence tending to support it, that the delay was consequent upon the fault of the party from whom he ordered it forwarded, and the trouble in procuring the necessary transportation; and that defendants were apprised thereof. On the conclusion of the evidence, the plaintiff asked and the court made the following declaration of law:

"If the court sitting as a jury believe from the evidence that on or about October 1, 1879, the defendants, Neiswaanger, furnished plaintiff's intestate with a bill of the lumber of extra lengths needed for their stable building on the corner of Eighth and Walnut streets; that said lumber was not in stock and had to be sawed to order; that thereupon said Deardorff, at said

Neiswaangers' request, made inquiries of various parties at different points as to the price at which said lumber could be furnished; that said Deardorff received a proposition from Schulenberg & Boeckler to saw and furnish said lumber within a certain time and at a certain price, by letter dated St. Louis, October 6, 1879; that said letter was shown to defendants, Neiswaanger, on October 7, 1879, the day of its receipt; that afterwards upon the same day, said Neiswaangers directed said Deardorff to order said lumber on said letter; that said lumber was accordingly ordered of said Schulenberg & Boeckler by said Deardorff; that the prices charged by said Deardorff to said Neiswaangers therefor were the invoice prices of said lumber in St. Louis, with freight to Kansas City and drayage added, and one dollar per thousand to said Deardorff for his profit or charge for handling said lumber; that said prices were according to the letter and offer of Schulenburg & Boeckler; that said lumber was actually used in the construction of the building of said Neiswaangers on lots 65 and 66, and the north two feet of lot 64, in Ross & Scarritt's addition to the City of Kansas, county of Jackson and state of Missouri; that a lien therefor was filed in the manner provided by law within six months after the account for said lumber accrued, and that suit thereon was brought in ninety days thereafter; that the delay in the delivery of said lumber, if any, was caused without fault on the part of said Deardorff; that Deardoff is dead, and plaintiff is his administrator, duly appointed and qualified—then plaintiff is entitled to recover against defendants the value of said lumber at the building, not to exceed the amount claimed in the petition, with interest at six per cent. from the date the lien was filed, and have a lien therefor enforced against the property hereinbefore described, unless the court shall find that said Deardorff made a special contract with defendants, Neiswaangers, to furnish said lumber by the 15th day of October, 1879, and that he did not so furnish the same; and, if the court shall find that such special contract was made, and that Deardorff failed to perform same by such delivery, the

defendants, under the pleadings in this case, are entitled to recovery from the plaintiff and have credit for only nominal damages for such failure to deliver such lumber by said Deardorff."

The defendants then made requests for declarations of law, declaring, in effect, that if the plaintiff contracted to furnish this lumber for the construction of the livery stable in question at the particular time as claimed by defendants, that he failed to so deliver the same, and in consequence thereof the defendants sustained the damage set up in their answer, the court should allow the same. The court refused to so declare the law, and found the issues for the plaintiff, and gave him judgment for the full amount of his claim with six per cent. interest from date of filing the account for the lien. Defendants have brought the case here by appeal.

KARNES & ESS, for the appellants.

I. Deardorff sold and agreed to deliver this lumber *to be used in the construction of this building*. This is set up in the answer. In the *affidavit* to the mechanic's lien Deardorff, plaintiff's intestate, swore it was furnished to *be used* and *was used* in the construction of this building. All the evidence shows without contradiction that it was in contemplation of Deardorff and Neiswaangers that this lumber was to be used in the building of this livery stable.

II. The contract was for these long timbers for a specific purpose. Deardorff agreed to deliver this lumber at a certain time, and by his agreement he is bound. *Dermot v. Jones*, 2 Wall. (U. S.) page 1. "The distinction between a duty enjoined by law and one created by the party is an established principle of our law. When the law creates a duty and the party is disabled to perform it without any default in him and he has no remedy over, the law will excuse him. But when the party by *his own contract* creates a charge or duty on himself he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract, etc." *Davis,*

*Admr., v. Smith,* 15 Mo. 469, *et seq.; Ruff v. Rinaldo,*
55 N. Y. 664; *Singer v. Farnsworth,* 2 Ind. 597; *Brown
v. Foster,* 51 Pa. St. 174; *Beaton v. Fay,* 64 Ill. 417;
*Clark v. Moore,* 3 Mich. 62, is not in point.

III. There was in this case a special contract.
Deardorff did not perform it according to its terms. By
the general rules of law a plaintiff cannot recover on a
contract he has not performed, and if there is a special
contract not performed by him he cannot abandon the
special contract and sue on a *quantum meruit* or *quantum
valebant.* This rule is relaxed only in cases of contracts
like the one in suit here, and then he can recover only on
the basis of allowing damages, and if damages exceed
the contract price he gets nothing. 7 Greenleaf (Me.)
38; 33 Vt. 38; 6 N. H. 48; 29 Mo. 99; 23 Mo. 229.

IV. Deardorff knew of the particular circumstances
at time of contract, that the lumber was not in the market,
and that the joists had to be sawed under special orders,
and if they were not furnished by him Neiswaangers
could not go into market and buy them.

V. The court refused to declare correctly the meas-
ure of damages. The rule of *nominal damages* in *this
case* is not applicable, and is against all the authorities
cited by us. The contrary doctrine was asserted by
instructions asked for the defendants and refused by the
court, and these declared the law correctly as to the
measure of damages. Attention was called to the error
of this refusal in the motion for new trial; to the act of
the court in giving and referring instructions defendants
excepted *at the time.*

LATHROP & SMITH, for the respondent.

I. The sole question in this case is the measure of
damages. There was evidence in the case to the effect
that the contract provided for delivery of the lumber
within a limited time and a failure to deliver within such
time. What damages were defendants entitled to by
reason of such failure? The court held that under the
pleadings and the evidence the damages could be only

nominal, and, in so holding, properly declared the law.

II.   In *Hadley v. Boxendale* (9 Exch. 341), the true rule for measuring damages for breach of contract was laid down, and has been followed in England and America down to the present time : "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract, should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself; or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." In this case the damages would be the extra cost over contract price of purchasing such lumber in the market at market price, with freight and interest for delay. *Fisher v. Goebel*, 40 Mo. 475 ; *Furlong v. Polleys*, 30 Maine 491 ; *Clark v. Moore*, 3 Mich. 62.

III.   Defendants did not show, or even claim, that they were compelled to pay any rent by reason of the delay. The loss of the possible rents that they might have received from the building is not a proper element of damage. *Taylor v. McGuire*, 12 Mo. 313 ; *Blunchard v. Ely*, 21 Wend. 342; *Friedland v. McNeil*, 33 Mich. 40.

IV.   For the same reason that expectant profits are rejected, the claim for damages for injuries to the floors because of exposure to the weather, and for the salary of superintendent must be rejected. Such speculative and problematical items of damage are uniformly disallowed, the consequences being too remote. *Davis v. R. R. Co.*, 1 Disney (Ohio) 23.

V.   The whole of defendants' claim for damages was properly rejected on the ground that all the damages alleged to have been suffered might have been avoided. They could have obtained the joists from some other market, protected their floors, and kept their superintendent employed at something else. Where a contract is broken the law requires both parties to be

vigilant, and it will not allow any damages which a party, by reasonable exertions, might have avoided. *Douglass v. Stephens*, 18 Mo. 362; *Eoff v. Clay*, 9 Mo. App. 176; *Thompson v. Shattuck*, 2 Metc. 615.

Opinion by PHILIPS, P. J.

There are two questions presented by this appeal which are of controlling importance. They are, first, admitting the truth of defendants' evidence, were they entitled to recoup any damages for the failure of plaintiff to deliver the lumber at the time agreed upon; and second, were they entitled to recover more than nominal damages?

1. It is conceded, in argument by plaintiff's counsel, that there was evidence tending to show that plaintiff agreed to furnish the lumber on or about the 15th of October, 1879. It is also conceded by the instruction, that if plaintiff made default in delivering the joists at the time stipulated, it constituted a breach of his contract; but that the damages would be merely nominal.

If the plaintiff had contracted with defendants for the delivery of this lumber at a given time and place, without any knowledge on his part of the purpose or use for which it was contracted, the rule of law is well settled, that for the breach of such contract on the part of plaintiff, the vendor, the measure of damages would be the difference between the contract price and the market value of such lumber at the time and place of delivery according to the contract.

But the real question at bar is, did not the plaintiff have notice that this lumber was designed for a special purpose? Aside from the other evidence in this record, strongly tending to show that plaintiff must have known the particular fact, the mechanic's lien filed by plaintiff, and read in evidence by him, shows that he knew at the time of entering into the contract that it was to be used by defendants in erecting this particular building on their lot. By the very provisions of the lien law, under the statute, it is made essential to the establishment of

the lien that plaintiff should have furnished the material under a contract with these defendants for this purpose. His affidavit to the account filed confesses that he so contracted and furnished the lumber. Superadded to which, the evidence on the part of the defendants was such as might reasonably warrant any jury in making the inference that plaintiff was advised of the specific object for which this lumber was contracted. Its peculiar and limited quality and character, and the anxiety manifested by defendants in their interviews with plaintiff concerning it, were such as to have impressed any reasonable person with the fact that the building was in process of erection, and the emergency for the prompt delivery of the lumber was great.

Under such a state of the proof we think the court improperly limited the inquiry as to damages.

2. Sutherland on Damages, vol. 1, p. 397, *et seq.*, expresses the general doctrine on this subject thus: "When goods, or those of a particular description, are bargained for, for a special purpose, or for delivery at a particular time and place, in view of ulterior contracts or preparations, a failure of the vendor to perform may cause injury which would not be compensated by that rule (*i. e.*, the difference between the contract price and market value); but unless that purpose, or the special circumstances from which, in case of default, such consequential damages would proceed, were communicated to the seller when the bargain was made, such damages, though they may arise naturally and proximately from the breach of the contract, are yet exceptional, and cannot be said to have entered into the contemplation of the parties. But if, at the time of contracting, sufficient notice be given of the intended use, or of other and dependent plans, the vendor, on failure to deliver, or delaying' delivery, will be subject to such damages. This rule is based upon reason and good sense, and is in a strict accordance with the plainest principles of justice. It affirms nothing more than where a party sustains a loss by reason of a breach of contract, he shall, so far as money can do it, be placed in as good a

situation, by recovery of damages, as if the contract had been performed."

The leading case on this subject, to which all the courts refer for a reasonable rule, is that of *Halley v. Boxendale* (9 Exch. 341 S. C. 26 Eng. L. & Eq. 398), in which Baron Alderson said: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract, should be such as may be fairly and reasonably considered, either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate would be the amount of the injury which would ordinarily follow from a breach of the contract under these circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he could only be supposed to have had in contemplation the amount of the injury which would arise generally, etc."

The trouble arises in making a practical application of the rule to the varying state of facts and circumstances of each particular case. The weakness of the defendants' case, as presented in the bill of exceptions, lies principally in the matter of carrying home to plaintiff special knowledge of the facts attending the situation of the building and the work in progress thereon.

3. As already stated, the knowledge which the plaintiff had at the time of making the contract, was that the lumber was designed for this particular building then in process of construction. It might be reasonably inferred, from the character of the lumber ordered, that it was to form a support for the floor, and was indis-

pensable to the completion of the structure. And, further, that there was some emergency for its timely delivery. The plaintiff is, therefore, only liable for such damages as might reasonably have been anticipated would likely result, according to the usual course of things, from his failure to comply, or such as may reasonably be supposed to have been within the reasonable contemplation of the parties.

We are of the opinion that the evidence in this case is such as to make plaintiff liable for the loss of the use of the building during the time its completion was delayed by the failure of plaintiff to deliver the lumber according to contract. Such damages are natural and reasonable, and such as any reasonable person might well anticipate to be likely to result from such delay.

In *Brown v. Foster* (51 Pa. St. 174–5), a party failed to complete a steamboat within the time promised. The measure of damages was held to be, not what it would cost the party to hire another boat for the time, but what would be the ordinary hire of such a boat during the time.

In *Ruff v. Rinaldo* (55 N. Y. 664), it is held that the measure of damages for the breach of a contractor's stipulation to build in given time, is the value of the use of the building while the owner is deprived of the use consequent upon the delay. It is further held in this case, that the permitting the delinquent to complete the work afterward does not waive the right of the other party to claim damages. This is the general rule. *Brown v. Foster, supra; Bragg v. Town of Bradford,* 33 Vt. 39; *Marsh v. Richard,* 29 Mo. 99; *Downs v. Burke,* 23 Mo. 228.

In *Griffin v. Colver* (16 N. Y. 489), the defendants contracted to construct for plaintiff a steam engine and deliver it by a certain time. They failed to deliver within the specified time. The measure of damages was declared to be, "a fair price to pay for the use during the time (of the delay) of the engine and machinery, in view of the hazard and chances of the business."

In *Strawn v. Coggswell* (28 Ill. 461), the plaintiff

sought to enforce a mechanic's lien for work done on a mill, etc. The defendant claimed damages for the manner in which the work was done. The court held the measure of damages to be, "the difference in value between the work as performed and such as the contract required, together with the necessary loss of its use while the change is being made."

In *Benton v. Fay & Co.* (64 Ill.), it is held, in a suit for failure to deliver a planing machine, bought by plaintiff of defendant, that the plaintiff should be allowed to show what would have been a fair rent for the use of the building and machinery, if in running order, during the time they lay idle in consequence of defendant's default.

The court, after citing a number of adjudged cases in support of its holding, observes: "It is claimed by defendant's counsel that none of these cases decided by this court related to contracts of sale. That is true, but we can perceive no difference in principle between the sale of a specific article for a specific purpose, and a contract to construct or to carry such an article for a specific purpose, so far as relates to the rule of damages to be applied in the respective cases." It can make no difference in such case that the defendants might have obtained another building for less rent or without any rent, or whether they could have found a lessee for this building if completed. The rule rests on no such foundation. In justice alike to both parties, it rests upon the definite, uniform and equitable principle of a fair rental value for the building during the time of the delayed completion.

4. As to the damages claimed for injury to the flooring and the walls, we do not see how they can be allowed, unless the evidence showed that plaintiff had notice at the time of entering into the contract that the flooring and walls were built, or that they would be built in anticipation of the prompt coming of the joists; and that the parties should reasonably anticipate that they would be subjected to the casualties of weather which came upon them. We think it would be unreasonable,

in the absence of proof, that plaintiff had knowledge that the floor was laid or would soon be laid in the manner it was, that he should be held to accountability for the somewhat unusual exposure and damage consequent upon heavy rains and snow falls. Likewise as to the injury to the walls. We do not think the natural law of the exposure of walls at that season of the year is so uniform as to make the damage claimed in this case "certain, both in its nature and in respect to the cause from which it proceeds." *Griffin v. Colver, supra.*

5. As to the item of damages on account of the salary paid by defendants to the superintendent of the building, we are of opinion that the proof would not have warranted the court in finding such issue for the defendants. The evidence does not show that plaintiff had any knowledge that defendants had such superintendent employed, much less that they had with him such contract as authorized him to draw his salary while the work was delayed. It was not shown that any such custom prevailed. In *Davis et al. v. Chinn H. & D. R. R. Co.* (Disney, Ohio 23), which was an action for damages for failure to deliver a boiler for a steam saw mill in a reasonable time, the court say: "As the article to be carried was evidently intended for use, and not for sale, and its use required certain preparations, these might or might not have been made in advance. If they were in fact so made, and a loss was incurred for the want of the article, which was the subject of the contract of carriage, it is one, I think, of that character which might have been reasonably supposed a party who has constructed a boiler adapted to a saw mill, and who contracts for its carriage to a place in the interior of the country, means to put in immediate use, and it is equally reasonable to suppose, that he has made the usual and necessary preparation for such a purpose. * * * I do not think it could have been reasonably expected that an engineer would have been employed, and his wages have been commenced in anticipation of the completion of the mill."

6. The respondent insists that the rule of damages

maintained in the foregoing part of this opinion ought not to obtain in this case, for the reason that defendants might, by reasonable exertion, have avoided the loss by purchasing the lumber in market. In support of this position we are referred to the case of *Clark v. Moore* (3 Mich. 55). The contract there was that defendant was to furnish plaintiff all the tarred and manilla cordage, etc., necessary to rig a vessal plaintiff was then rigging at Truggo. In an action for damages for failure on the part of defendant to deliver all of this material the court held, first, that owing to the peculiar phraseology of this contract, the designation of the use to which this cordage was to be put, was "merely to designate the quality to be furnished, and not an undertaking that the vendee should have the use of the goods for the purpose specified;" and, second, that as such articles were usually kept and to be found elsewhere in that market, although it transpired when plaintiff, after defendant's failure to deliver, tried but failed to obtain the material in that market, the plaintiff could not recover any special damages because it was not within the reasonable contemplation of the parties, at the time they entered into the contract, that the market where such goods were customarily kept, would be wholly exhausted.

Without giving my assent to this conclusion as sound law, it is perfectly consistent with the right of recovery in this case. Here the fact is, that the plaintiff knew when he entered into this contract that this character of lumber was not obtainable in the market at Kansas City. He knew that it required to be especially prepared, and this could only be done from this market, and far away from it. It is in this respect much like the case of *Cockburn et al. v. The Ashland Lumber Co.* (54 Wis. 619). The contract there was for the delivery of certain kind of lumber for a certain purpose at a given time and place. The evidence showed there was no such lumber in the market where this contract was to be executed. The court permitted the defendant to prove that plaintiff might have procured such lumber at another point on a certain railroad line. The court held

this to be error. After reverting to the general rule for the ascertainment of damages in ordinary contracts for failure to deliver goods, Lyon, J., says: "But this rule pre-supposes that the purchaser may go into the market at the agreed time and place of delivery and obtain the goods. If no such goods can be obtained at this place there can be no market price there by which to measure the purchaser's damages. The idea that there can be a real substantial market price for a given commodity when there is no such article for sale in the market is absurd. * * * The court admitted testimony tending to show that the plaintiff could have procured the deals to be manufactured at some of the mills on the W. Railway. We think the testimony should have been rejected. We find no proof that the plaintiff had any notice that the defendant would not perform its contract until it made default. * * * Until they have notice to the contrary the plaintiffs might well rely on their contract with the defendant to obtain the deals; and before the defendant can be allowed to show that the deals might have been obtained by the plaintiffs at the mills on the railroad must show not only that the deals, of the grades and dimensions specified in the contract, could have been thus obtained, but that plaintiffs had sufficient time after notice that defendant would not deliver, and before the time (of delivery specified in the contract) to purchase the same at the place (named) etc."

This ruling we concur in; for it stands upon that ancient canon of the law of contracts, that "where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." *Paradike v. Jayne*, Alleyn Rep. 23; 23 Car. 2; *Davis, Admr., v. Smith et al.*, 15 Mo. 467. And Mr. Justice Swayne, in *Dermott v. Jones*, 2 Wall. 7, adds: "Unforeseen difficulties, however great, will not excuse him."

7. It follows that the first instruction given by the

court was too narrow. Should the defendants on a further trial, seek to bring their claim for the damages, other than the rental value of the premises, within the principles laid down in this opinion, their instructions should be so framed as to present more directly, for the finding of the jury, the question of the extent of the notice or knowledge had by the plaintiff at the time of entering into the contract.

The judgment of the circuit court is reversed, and the cause remanded for further proceedings in conformity with this opinion. All concur.