Chalice v. Witte.

---

W. L. CHALICE et ux, Respondents, v. ED. H. WITTE, Appellant.

Kansas City Court of Appeals, May 29, 1899.

1. **Sales; FAILURE TO DELIVER: MEASURE OF DAMAGES.** Where the vendor fails to deliver the article sold, the measure of damages is the difference between the contract price and the market price at the time of the breach.

Chalice v. Witte.

2. ———: ———: ———: CONTEMPLATED INJURY: INSTRUCTION. The vendor who fails to deliver the article sold according to contract is liable for such damages as were reasonably within the contemplation of the parties and would naturally result under the special circumstances known to the parties at the time of the contract; and the vendor of an engine to be used to his knowledge in grinding corn for feeding cattle for the market will be liable for the increased necessary expense likely to be incurred by a failure to deliver the engine according to contract, and an instruction to that ·effect is proper.

3. ———: ———: ———: ———: ———. And such vendor will likewise be liable for the necessary additional expense incurred by the vendee in buying other food for his cattle, viz., the difference in cost of the corn meal as ground on the contemplated mill and the cost of cotton seed meal necessarily bought by reason of the failure to deliver the engine, and such injury was reasonably within the contemplation of the vendor when he made the contract although he may not have been notified that cotton seed meal would have to be substituted for the corn meal. .

4. ———: ———: ———: ———: TIME. Where the vendor of an engine to be used in grinding corn to feed cattle for the market fails to deliver and is held liable for the difference in the market and contract price of the engine and for the increased expense of grinding without it, and for the difference in cost of the food so ground and the food necessarily bought as a substitute, he can not be held further liable for the alleged delay of getting the cattle on the market.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

DOWNS, MOORE & PERRIMAN for appellant.

(1) Unless a market is shown to exist, wherein plaintiffs could have bought another engine in time to serve their purpose, the convenience rule of difference between purchase price and market price can not apply. 1 Sutherland on Dam., p. 91; Woods' Mayne on Dam., par. 22. (2) Defendant's instruction number 6 gave the jury the true mode for estimating the plaintiffs' damage, by being compelled to feed cotton seed meal, and should have been given. (3) Damage

from delay in getting to market with part of the cattle, "not natives," was both remote and speculative. Sutherland on Dam., p. 74, sec. 4. (4) Both grinding at Benedict's and buying cotton seed meal are remote damages, and not recoverable for that reason. 1 Sutherland on Dam., p. 56. (5) The jury were improperly told to make plaintiffs' compensation "full" as well as fair. (6) · The judgment, even after reduction, is excessive.

J. M. CHALLISS and H. S. HADLEY for respondents.

It was for the jury to determine whether the substitution of cotton seed meal for corn took the place of the corn that was lacking.

SMITH, P. J.—On February 11, 1895, the plaintiffs and defendant entered into a written contract by the terms of which the defendant agreed, on or before the STATEMENT. eleventh day of the following April to ship plaintiffs at Goff, in the state of Kansas, a twenty-five horse power gasoline engine, in consideration of which the plaintiffs agreed when the said twenty-five horse power engine was placed on its foundation at Woodlawn, the place where plaintiff resided, to box and ship to the defendant a certain fifteen-horse-power engine, previously purchased of defendant. It was therein further agreed that at the time when said first mentioned engine should be in successful operation, plaintiffs would execute to defendant their promissory note for $300 securing the same by chattel mortgage on said engine. It was further agreed therein that the said contract should supersede all existing contracts between the parties and that plaintiffs thereby waived all claims against defendant for damages to that date, etc.

The defendant wholly neglected to ship the said twenty-five horse power engine. This action was brought to recover damages resulting from the breach of said contract.

It is alleged by the plaintiffs in their petition that they were damaged by the failure of the defendant to ship said engine, which he had agreed to ship under his contract, in the full sum of $800, in that said engine was of the value of $1,100, and was to cost plaintiffs only $300. It was further therein alleged that plaintiffs were engaged in the business of farming and stock raising, and especially in the feeding of cattle for market; that at the time defendant entered into said contract he knew and was informed of the business in which the plaintiffs were engaged and the purpose for which said engine to be furnished by the defendant was to be used, to wit: to grind the feed for two hundred and twenty head of cattle; that the said engine was to be wholly used for that purpose, and for that purpose it was sold to plaintiffs; that the plaintiffs depended upon the engine, to be furnished by the defendant, to furnish motive power for the purpose of grinding grain for said cattle; that the plaintiffs had no other adequate power to grind said grain for said cattle; that the plaintiffs could not feed unground grain or uncut fodder without great loss; that the foregoing facts were brought to the knowledge of the defendant at the time he entered into the aforementioned contract, and he entered into the same with the full knowledge thereof; that owing to the neglect, failure and refusal of the defendant to carry out his contract and furnish said engine on the eleventh day of April, 1895, the plaintiffs were compelled to haul the grain to feed said cattle a distance of one mile and grind the same by horse-power, which is a slow, laborious and expensive process; that plaintiffs could grind but sixty bushels per day, at a cost of three cents per bushel, and the additional cost of the labor of two men and teams at a cost of $5 per day, and at the aggregate cost of $6.80 per day; that the plaintiffs were compelled, and did on account of failure, neglect and refusal of the defendant to furnish the aforesaid engine, haul and grind their said grain at an expense of $6.80

per day for a period of fifty days, amounting in the aggregate to an expense of three hundred and forty dollars ($340); that had defendant furnished said engine on the eleventh day of April, 1895, plaintiffs would have been able to have ground the feed for their said cattle at an expense of only $2 per day, or at an expense of $100 for fifty days; whereby, through the negligence, failure and refusal of the defendant to carry out his contract to furnish said engine on the day agreed upon, plaintiffs were damaged in the further sum of two hundred and forty dollars ($240).

Plaintiffs further allege that even though they did haul and grind their grain, as aforesaid, the amount that they could grind was insufficient to properly feed their said cattle, and was not as large an amount as they could have ground had they had the engine which defendant agreed to furnish on the eleventh day of April, 1895; that the grain so ground by the plaintiffs was not adequate to properly feed said cattle, and owing to the failure, neglect and refusal of the defendant to furnish the said engine at the time agreed upon, the plaintiffs were compelled to buy, and did buy, for the purpose of feeding said cattle, cotton seed meal to the amount of four hundred and thirty-seven dollars ($437), which expenditure for cotton seed meal they were compelled to make, and did make, by reason of the negligence, failure and refusal of the defendant to comply with his contract as above set out; that as to the necessity of the plaintiffs having to make such expenditure for cotton seed meal, the defendant was fully informed at the time he entered into said contract in the event that he did not carry it out; whereby plaintiffs were damaged in the further sum of $437.

The plaintiffs further allege that owing to the negligence, failure and refusal of the defendant to furnish the said engine at the time promised to furnish the same, they were damaged in this, that their cattle shrunk or fell off in weight and were

unable to and did not make the proper and natural increase in weight and growth which they should have made had they been supplied with sufficient amount of properly ground food, and that said cattle were not fitted for the market as soon as they would have been had the defendant furnished the engine at the time he agreed to furnish the same.

At the time the defendant entered into the contract he was informed and knew that plaintiffs intended to feed two hundred and twenty head of cattle on the grain to be ground by the engine which the defendant agreed to furnish on the eleventh day of April, 1895. That owing to the neglect, failure and refusal of the defendant to furnish the said engine, the plaintiffs were able to fit only one hundred and eighty head of the said cattle by means of their primitive method of grinding grain by horse-power; that the plaintiffs still have on hand forty head of said cattle which are not yet ready for the market, but have been fed a large amount of grain, which is now all lost to the plaintiffs; that had defendant furnished the said engine at the time he agreed to furnish the said engine to the plaintiffs, the plaintiffs would have been able to have fitted their said cattle for the market; but by reason of said failure, neglect and refusal of the defendant to furnish the said engine at the time agreed upon, plaintiffs were damaged to the amount of $8 a head on the one hundred and eighty head of cattle which they sold, to wit: fourteen hundred and forty dollars ($1,440), and were damaged to the amount of $9 a head on the forty head of cattle which they have not sold, to wit: three hundred and sixty ($360), all to the damage of the plaintiffs in the sum of $1,800.

Wherefore, the plaintiffs pray judgment against the defendant in the full sum of thirty-two hundred and seventy-seven dollars ($3,277) and the costs of this action.

The answer was a general denial. There was a trial resulting in a verdict for plaintiffs for $1,500. The plaintiffs

entered a remittitur for $500 and thereupon judgment was given for $1,000. The defendant appealed.

The principal errors assigned and on which defendant relies for a reversal of the judgment relate to the action of the court in the giving and refusing of instructions.

SALES: failure to deliver; measure of damages.

The defendant contends that that part of the plaintiffs' instruction which told the jury that, if they found for plaintiffs they should take into consideration what would be a full or just compensation to them for their loss and damage, if any, by reason of the failure to deliver said engine in accordance with the terms of the said contract, and in determining what this compensation should be they should take the difference between the market value of said engine and the price and value that plaintiffs agreed to pay for the same, not exceeding $800, should not have been given for the reason that there was no evidence adduced which tended to prove the market value of the engine which defendant had obligated himself to ship the plaintiffs. But this contention can not, we think, be sustained.

The evidence disclosed by the record tends to prove that there was a market for gasoline engines. The defendant himself testified that at the date he had agreed to deliver said engine to the plaintiffs he had one of that kind in stock. Besides this, another dealer in such engines at Kansas City testified that he kept them in stock in the rough and furnished them on orders. Defendant further testified that an engine like that which he agreed to ship plaintiffs was, at the date he agreed to make the shipment of the same, of the value of $1,000 in Kansas City. This evidence tended to show not only a market for such engines but the value thereof in such market. It does not clearly appear from the evidence what, if any, the value of the fifteen-horse power engine was. Where a vendor fails to comply with his contract the lawful measure of damages is the difference between the contract and the market price of the article at the time of the breach.

Sutherland on Damages [2 Ed.], sec. 46. Accordingly it would seem that the plaintiffs were entitled to the difference between the $300 which the plaintiffs were to pay under the contract plus the value, if any, of the fifteen horse power engine, and the market value of the engine which the defendant failed to ship to the plaintiffs. No error is perceived in this part of plaintiffs' instruction.

The defendant further objects that so much of the plaintiffs' said instruction as told the jury that they should "also consider the reasonable loss and damage, if any, which plaintiffs had to incur by reason of the failure of defendant to deliver said engine, in the grinding of feed for their said cattle, in case you find that the necessity of such additional expense, if any, in the grinding of feed for their said cattle, in case said contract was broken, was brought to the attention of defendant at the time he entered into the contract for the sale of said engine, or that the necessity of such additional expense, if any, may be fairly considered to have been in the contemplation of the parties, by reason of the knowledge, if any, defendant had as to the use for which said machine was purchased, at the time they entered into said contract, not exceeding the sum of two hundred and forty dollars," was an incorrect expression of the law, as applied to the facts which the evidence tends to establish.

*contemplated injury: instruction.*

There is an abundance of evidence tending to prove the facts embraced in the hypotheses of the part of the plaintiffs' instruction just quoted. It is also a well settled rule that where a party sustains a loss by reason of a breach of contract he shall, so far as money can do it, be placed in as good a situation by recovery of damages as if the contract had been performed. Shouse v. Neiswaanger, 18 Mo. App. loc. cit. 244. In consequence of the failure of the defendant to deliver the engine the plaintiffs were unable to grind the needful feed for their cattle, whereby they were subjected to damage; and there-

fore the rule by which they were authorized to recover the difference between what they were to give in exchange for the engine and its market price at the time it was to be delivered would fall far short of placing them in as good a situation as they would have been, had the contract been performed. It would seem that this could be measurably accomplished by the practical application of the rule declared in Hadly v. Boxendale, 9 Exch. 341; s. c., 26 Eng. L. & Eq. 398, which is to the effect that: "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may be fairly and reasonably considered either arising naturally, i. e., according to the usual course of things from such breach of contract itself, or such as may be reasonably supposed to have been in contemplation of both parties at the time they made the contract as the probable breach of it. Now if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate would be the amount of the injury which would ordinarily follow from such breach of the contract under these circumstances so shown and communicated. But on the other hand, if these special circumstances were wholly unknown to the party making the contract, he could only be supposed to have had in contemplation the amount of injury which would arise generally," etc. This rule has been heretofore quoted with approval by us. Shouse v. Neiswaanger, *ante.*

In Griffin v. Colver, 16 N. Y. 494, it is said: "The broad general rule  *  *  *  is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions. The damages must be such as may fairly be supposed to have entered into the contemplation of the parties

when they made the contract; that is, must be such as might naturally be expected to follow its violation, and they must be certain both in their nature and in respect to the cause from which they proceed."

The bill of exceptions discloses evidence which tends to prove that before the time the defendant entered into the contract he had visited Woodlawn and inspected the plaintiffs' mill. He knew its capacity and the purpose for which it was operated. He saw plaintiffs' cattle and was fully informed by the latter of their method of feeding their cattle. He knew that such cattle were being prepared for market and that they were to be fed on corn meal. He was informed that without the power which was to be afforded by the engine which he had agreed to furnish, the mill would not grind the quantity of feed needed to economically feed plaintiffs' cattle. He was informed that when corn on the cob or shelled was fed to cattle a large per cent of it would pass through them undigested and therefore wasted, unless they were followed by hogs. He knew the plaintiffs had no hogs to follow their cattle. He was informed that the power which was to be supplied by the engine contracted for was necessary to enable the plaintiffs to feed their cattle economically, and to obtain the quickest and best results in the preparation of them for market. The special circumstances under which the contract was actually made were fully communicated to and within the knowledge of the defendant when he entered into the contract, and the damages resulting from the breach were such as both parties would reasonably contemplate would be the amount that would ordinarily follow from the breach under those circumstances. The damage that would result to the plaintiffs for want of mill facilities in grinding their corn, occasioned by defendant's default, was reasonably within the contemplation of the defendant when he entered into the contract. The necessary expense which plaintiffs would likely have to incur

in their endeavor to have their corn ground, if defendant
failed to deliver the engine at the time called for by the con-
tract, was certainly one of the items of damage which was
reasonably within the contemplation of the defendant when
he entered into the contract. And this is the theory of the
plaintiff's instruction relating to loss in grinding the feed for
their cattle, which accords with the rule declared in Hadly v.
Boxendale, *ante*.

And the defendant further objects that so much of plain-
tiffs' instruction as further told the jury that they should
also consider the reasonable compensation to
plaintiffs for the additional expense, loss or
damage, if any, which they were compelled to
incur, and did incur, by reason of the failure of defendant to
deliver said engine in accordance with his said contract, in the
purchase of cotton seed meal, if same was necessary for their
said cattle, in case you further find that the necessity of such
additional expense, if any, in case said contract was broken,
was brought to the attention of defendant at the time he
entered into said contract, or that the necessity of such addi-
tional expense, if any, in the event of the breach of said con-
tract, may reasonably and fairly be considered to have been
in the contemplation of the parties, by reason of the defend-
ant's knowledge aforesaid, at the time they entered into said
contract, not exceeding $430, was an improper expression of
the law of the case.

It appears from the evidence that the horse-power mill
which the plaintiffs rented had not capacity to grind the
quantity of corn required to feed their cattle by one fourth,
or twenty bushels. To supply this deficiency the plaintiffs
purchased cotton seed meal. If the plaintiffs were unable to
grind the quantity of corn necessary for the feed of their cat-
tle, in order to keep them in a thriving condition, then, as
prudent cattle feeders, they would, of course, substitute the
next best and most economical feed accessible to them for the

purpose. If the cost of supplying the deficiency in corn meal with cotton seed meal was greater than the cost of the equivalence thereof in corn meal ground on the plaintiffs' own mill, had the defendant furnished the engine, then no reason is seen why the difference in the cost of the two meals was not an item of damage fairly and reasonably within the contemplation of the defendant when he entered into the contract and for which he was liable. In order to render defendant liable it was not required that the plaintiffs should have notified the former at the time he entered into the contract that in case he made default, they would be compelled to substitute cotton seed meal for so much of the needed corn meal as they should be unable to procure, for this must be held to have then been reasonably contemplated by him. To deny to the plaintiffs this item of damage, resulting from the breach of the contract, would be to render ineffectual the principle which entitles a party to compensation commensurate with his injury. This damage is obviously one of the natural and proximate results of the breach of the contract.

It is stated in Sutherland on Damages, section 54, that where the alleged breach of contract is alleged with requisite certainty to be the cause of the injury in question, it is also to be deemed the cause of all of its concomitant and incidental details which are constituent parts of the injury, including necessary and judicious expenditures made to stay or efface the wrong or limit its consequences. The part of the plaintiffs' instruction last quoted left it to the jury to say whether or not the plaintiffs were compelled to undergo any additional expense in purchasing cotton seed meal by reason of the defendant's default. Under it, the jury was authorized to determine from the evidence whether or not the cost of the cotton seed meal was greater than the cost of an equivalent quantity of corn meal ground on plaintiffs' mill, had the defendant furnished the engine under the contract.

The defendant's sixth instruction in effect so directed the jury. It might with propriety have been given, but in view of the latitude which the jury was allowed by that part of the plaintiffs' instruction last referred to we can not see that the defendant was injured by the refusal of his said instruction.

It is further objected that so much of the plaintiffs' said instruction as told the jury that they might also consider the reasonable loss and damage to plaintiffs, if any, by reason of the failure of defendant to deliver said engine in accordance with his said contract, as well as a fair, full and just compensation to them for their loss and damage, if any, by reason of the fact that if you find it to be a fact that plaintiffs were unable to fit their cattle for market as soon as they could have done had defendant delivered said engine in accordance with his said contract, in case you further find that such loss and damage, if any, was brought to the attention of defendant at the time he entered into said contract, or may fairly be considered to have been in the contemplation of said parties, by reason of the knowledge of defendant as aforesaid, at the time they entered into said contract, was erroneous.

It is not perceived upon what principle the plaintiffs were entitled to recover this item of damage. The plaintiffs by resorting to the horse power mill were enabled to provide three-fourths of the corn meal required to feed their cattle, and for the other fourth they substituted cotton seed meal in a quantity sufficient to get the same results as if the cattle had been fed exclusively on corn meal. This method of feeding was adopted on the day defendant made default in delivering the engine and was continued from thereon until the time when plaintiffs reduced the number of their cattle by sales, after which the hired mill had sufficient capacity to grind all the corn required for the remainder. The plaintiffs did not change their feed pens. The conditions were therefore in every respect precisely the same as if the defendant had

furnished the engine and the cattle had been fed on meal ground on plaintiffs' mill.

If all the meal fed the plaintiffs' cattle had been ground on their own mill, the expense of feeding such cattle would have perhaps been less but the length of time required by such feeding to prepare them for market would have been exactly the same in either case; so that the plaintiffs' right of recovery should have been limited to the three preceding items of damage to which we have referred. A recovery of these items afforded them complete compensation for their entire injury. If the cattle were fed longer than was usual, or at a loss, the defendant's default was not the direct and proximate cause thereof. The cause must be found elsewhere. To allow this item would be to allow the plaintiffs to recover for a loss they did not sustain in consequence of any default of the defendant. It therefore follows that the last quoted part of the plaintiffs' instruction should not have been given.

No error is perceived in the action of the court in refusing defendant's instructions.

The judgment will be reversed and cause remanded. All concur.