MINNEAPOLIS THRESHING MACHINE COMPANY, Respondent, v. W. E. BRADFORD, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **DAMAGES: Breach of Contract: Lost Profits not Recoverable Where Uncertain, or not Within Contemplation of Parties.** In an action for damages for breach of contract where recovery is denied for loss of profits it is because the profits were uncertain, conjectural, or speculative in character, and not susceptible of being reasonably ascertained, or because they were not deemed to have been within the contemplation of the parties, being outside of the legitimate scope of the breached contract.

2. ——: ——: **Natural and Proximate Result: Compensation Should be Equal to the Injury.** The general rule of damages for a breached contract is that compensation should be equal to the injury, subject to the condition that the damages be confined to

206 M. A.—39

those naturally and proximately resulting from the breach, and are not within the two classes above specified.

3. ———: ———: **Lost Profits Necessarily Following Breach, Recoverable if Evidence Sufficiently Certain and Definite.** In an action for breach of contract, if it reasonably appear that profits would have been made had the terms of contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages If evidence is sufficiently certain and definite to warrant jury in estimating their extent.

4. ———: **Sales: Buyer Entitled to Recover Usual and Ordinary Loss of Profits Due to Delay and Failure to Deliver Threshing Outfit.** Where seller was informed when sale of threshing outfit was made to buyer, and again after delivery of a part thereof, that buyer had already obtained the job of threshing for a definitely ascertainable number of customers with a definite amount of wheat to thresh, and the use of threshing outfit, and the ability to perform the definite job buyer had obtained, induced buyer to enter into the contract, the buyer was entitled to recover damages for the usual and ordinary loss on such job to the extent the same could be ascertained and definitely shown with reasonable certainty.

Appeal from the Circuit Court of Pettis County.—*Hon. Hopkins B. Shain,* Judge.

REVERSED AND REMANDED.

*George F. Longan* for respondent.

*Wilkerson & Barnett* and *Lamm, Bohling & Lamm* for appellant.

TRIMBLE, P. J.—Having sold a threshing outfit to defendant and accepted a chattel mortgage thereon for the unpaid purchase money, plaintiff brought replevin based on said chattel mortgage to recover possession of said outfit; and under the writ it was taken from defendant, who, in his answer, demanded its return and set up as a defense a counterclaim for certain damages based upon a breach of plaintiff's contract in selling him the outfit.

Plaintiff introduced the chattel mortgage and rested as soon as it was disclosed that three of the unpaid notes, aggregating $1552 of principal, were due at time of the institution of suit and that the value of the property was agreed upon as being $4365.30. Thereupon the defendant introduced evidence to show that the plaintiff contracted to sell him, as a necessary part of said outfit, a Heineke Rotary Band Cutter and Feeder, but had substituted a Garden City Feeder instead; and when defendant refused to accept the outfit, plaintiff agreed to furnish the Feeder bargained for in a few days and renewed said promise from time to time, but never did so. That finally after much delay, plaintiff informed defendant that it could not furnish the Heineke Feeder, whereupon defendant ordered one elsewhere; that he was thereby delayed in beginning threshing from the 17th of June until the 16th of July. Defendant then attempted to show damages arising out of said breach, but the court ruled that the measure of his damage would be confined to the value of the Heineke Feeder, that was not furnished, with nominal charges for the breach and interest upon any money invested for the time the feeder was not furnished, and excluded all evidence offered by defendant to show any other damage. During the trial the plaintiff voluntarily gave a credit upon the notes for the price of the feeder which it never furnished, together with the freight bill thereon and $5 expense for coming after it. When the evidence of the damage claimed by defendant was excluded, the court gave a peremptory instruction to find for plaintiff, which was accordingly done, and defendant appealed.

Plaintiff had a local agent in Sedalia who along about the 15th or 20th of May, 1919, solicited defendant, a farmer in the neighborhood, to purchase a threshing outfit of plaintiff, one of the necessary and component parts of which was to be a Heineke Rotary Feeder and Band Cutter. It was sold by sample and the outfit was to be ordered and sent to Sedalia.

Defendant offered to show that he told the agent that fourteen farmers had met and engaged him to thresh their wheat consisting of about 500 acres; that the farmers in another neighborhood had also had a meeting and engaged him to do their threshing, and certain other farmers had privately contracted with him to do their threshing; that he also told plaintiff he had these jobs and if he took the outfit at all it had to be ready for delivery by the time wheat threshing season opened, and he gave the order upon the agreement that the outfit would be on hand.

The outfit came, but instead of there being a Heineke Feeder, plaintiff sent a Garden City Feeder instead. Defendant, having contracted for a Heineke Feeder and the order for the threshing outfit being one entire transaction for one complete threshing appliance of which the feeder was a necessary part, refused to accept the outfit. Thereupon the local agent put defendant in telephonic communication with plaintiff's superintendent in Kansas City and the defendant was assured that the Heineke Feeder would be sent in a few days. Defendant at that time also told plaintiff that he had the different jobs of threshing above mentioned and unless he could get the feeder within the next three or four days, he would not sign the chattel mortgage or notes; that if the feeder did not come within that time, he would sustain big damages, he would lose all these jobs and then could not afford to buy the machine. There was no offer at any time to lend him the Garden City Feeder but only an offer to *sell* it to him at a price demanded by plaintiff. Defendant was assured he would get the Heineke Feeder not later than the 17th of June, 1919, which was the beginning of the threshing season; and upon this promise and on this condition he, on June 16, 1919, executed the chattel mortgage and notes, the former describing and covering a Heineke Feeder, and took the outfit, except the feeder which, as stated, had not come. Thereafter, from day to day, promises were made that the feeder would arrive, but it did not come, and finally plaintiff,

in about 12 or 15 days, notified defendant that it could not send that kind of a feeder; whereupon defendant ordered one elsewhere and it came about a month after the receipt of the other machinery bought of plaintiff, so that defendant was prevented from doing any threshing from the 17th day of June, until the 16th day of July, 1919, or twenty-six working days in that period. Defendant offered to show that his own crop of wheat, consisting of fifteen acres, was ready to thresh on June 16, 1919, and to avoid damage should have been threshed not later than June 25, 1919; that he was unable to get such wheat threshed and it was totally destroyed. He further offered to prove that he lost the jobs of threshing he had secured, and also offered to prove the amount and extent thereof, what he would have received therefor, less what it would have cost him to do the work, that 24 of the 26 working days, in which he was prevented from threshing, were clear days in which such threshing could have been done and offered to prove the amount of threshing he could have done and the amount of loss he had sustained by reason of his being prevented on account of plaintiff's breach of contract.

The court excluded defendant's evidence on the ground that he was attempting to prove loss of profits and that such cannot be shown as consequential damages for breach of contract. While such, no doubt, is the general rule, broadly speaking, yet there are exceptions, and this, we think, is one of them. Many cases can be found denying recovery for loss of profits, but it will be found that such denial is based on one or both of the following grounds, namely, 1, because the profits were uncertain, conjectural, or speculative in character and not susceptible of being reasonably ascertained; 2, because they were not deemed to have been within the contemplation of the parties to the contract. On the first ground, such damages are refused because they are not susceptible of definite proof, and on the second, they are denied because they are outside the legitimate scope of the breached contract. But does either of these two

classes of conditions exist in the case at bar? Here the threshing outfit was bought for a *special purpose* to be delivered at a *particular time* and place in view of *certain contracts* and conditions. And all of these things were *made known* to the vendor. If now, the only measure of damages is the difference between the contract price and the market value, then defendant is wholly without compensation for the loss he has sustained. But the general rule of damages for a breached contract is that compensation should be equal to the injury, subject to the condition that the damages be confined to those naturally and proximately resulting from the breach and are not within the two classes above specified. [Sutherland on Damages (4 Ed.), p. 187.] The same work on page 228, after stating the grounds upon which the general rule excluding profits is founded, says:

"Cases arise, however, in which loss of profits is said to be clearly within the contemplation of the parties, although not provided for by the terms of the contract, and where such profits are not open to the objection of uncertainty or remoteness. An instance of the latter kind is where the contract is entered into for the purpose, in part at least, of enabling the party to fulfill a collateral agreement from which profits would arise, of the existence of which he informed the other party prior to the making of the contract. In such cases the loss of profits from the collateral agreement is clearly within the contemplation of the parties, and is not remote or speculative."

The earlier decisions excluding profits altogether have been abandoned under the more modern practice, and the right to recover profits, in actions for breach of contract as well as in tort, is now generally determined by the same rules as govern the recovery of other damages. [8 R. C. L. 501.] So that "lost profits are a proper element of damage when such loss is the direct and necessary result of the defendant's acts, or where, in cases involving a breach of contract, the loss of profits may reasonably be supposed to have been within the

contemplation of the parties when the contract was made, as the probable result of its violation, and where in both classes of cases, such profits can be shown with a reasonable degree of certainty. Subject to these principles, a recovery may be had for the loss of profits which would have been realized had the contract been complied with." [8 R. C. L. 502.] "Loss of profits growing out of an existing collateral or subordinate agreement may be recovered where they are within the contemplation of the parties when the original contract was made; but, as in other cases of special damage, the defendant must have had notice of the existence of such collateral contract at that time." [8 R. C. L. 506.] It is reasonably clear that damages may be recovered for loss of profits caused by a breach of contract, and that they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent. [Wilson v. Wernwag, 217 Pa. St. 82, 93; See, also, Wakeman v. Wheeler, etc., Co., 101 N. Y. 205; Guetzcow, etc., Co. v. Andrews & Co., 92 Wis. 214, 217, 218; Industrial Works v Mitchell, 114 Mich. 29; Central Trust Co. v. Clark, 92 Fed. 293; Illinois, etc., R. Co. v. Cobb, 64 Ill. 128; Carpenter v. First National Bank, 119 Ill. 352.

In Chalice v. Witte, 81 Mo. App. 84, it was held that the ordinary rule of difference between the contract and market price would fall short of compensating plaintiff for a breach of contract and that defendant should be held liable for such damages as would naturally result under the special circumstances known to the parties at the time of the contract and which were reasonably within the contemplation of the parties. [See, also, Mark v. Williams Cooperage Co., 204 Mo. 242, 265; Martin v. Bunkerculler Lumber Co., 167 Mo. App. 381; Sloan v. Paramore, 181 Mo. App. 611; Gourley v. American

Hardwood, etc., Co., 185 Mo. App. 360; Shouse v. Nei-swanger, 18 Mo. App. 236.] It is true, in the last cited case, the damages were not called profits but were denominated under one general head as "rental value" of the building, but the principle is the same, and in the other cases the damages sustained were in fact lost profits even though not strictly so termed. [See, also, 35 Cyc. 643, 644, 646; Skagit R. Co., v. Cole, 2 Wash. 57, 73; Richardson v. Chynoworth, 26 Wis. 656, 660; Stewert v. Power, 12 Kan. 596; Ramsay v. Tully, 12 Ill. App. 463; Neal v. Pender-Hyman, etc., Co., 122 N. C. 104; Abbott v. Hapgood, 150 Mass. 248; Griffin v. Colver, 161 N. Y. 489.]

It will also be observed that in this case the use of the threshing outfit and the ability to perform the *definite* jobs *already* obtained was the inducement to defendant to enter into the contract, and of this the plaintiff was explicitly informed; and where this is the case, the loss of such profit is the measure of damages. [8 R. C. L. 505.]

We do not mean to hold that plaintiff would be liable for any and all profits which defendant might be able to make by going out threshing for whomsoever he could secure as an employer. The profits arising out of that would be too uncertain and the success of such a venture would depend upon too many unknown and conjectural elements. But, in view of plaintiff's knowledge of the special circumstances of the case and the fact that defendant had *already* obtained the job of threshing a *definitely* ascertainable number of customers with a *definite* amount of wheat to thresh, why should he be deprived of the damages arising from the loss sustained by the plaintiff's breach of the contract merely because the money he would have obtained for the same, less his expenses, may be denominated profits and cannot be stated in terms of "rental value" of the outfit, since there is no system of renting such machines and therefore the rental value cannot be given in such market terms?

The net return defendant would have obtained from this work is not like the profits arising out of *future* business, itself unknown and dependent for success on many conjectural elements, such as the favor of the public, the state of the weather, the amount of competition, etc. The business was obtained, and the amount to be received therefrom was known and the expense could be determined with reasonable certainty. If the profits are reasonably certain of computation and the loss thereof is within the contemplation of the parties to the contract and arise naturally from the breach, they are recoverable. [8 Am. & Eng. Ency. of Law (2 Ed.), 623-4.] We do not mean to permit defendant to go beyond what he definitely and certainly had in the way of threshing jobs, nor to permit him to show his losses on these beyond what can be definitely shown with reasonable certainty; and then only for the usual and ordinary loss that can be so ascertained. We do not know what can be shown in this regard, since at the very first step into the field of his losses, he was stopped by the court and the evidence was not allowed to be developed. We think that under the circumstances disclosed in this case the defendant should not have been limited to the rule announced, at least not until after the evidence had been disclosed, and then, if his losses on account of the special circumstances, were uncertain, conjectural, speculative or remote, dependent upon too many unknown factors or contingencies, it would be timely and proper to exclude them from the measure of his damage. But to limit the defendant to a reduction of the price of the feeder with interest thereon, would, under the circumstances of this case, deprive the defendant of any practical remedy for plaintiff's breach of the contract. In the cases, denying recovery, it will be found that elements of uncertainty, contingency, competition, the weather, etc., enter into the business and on account of these as existing or manifestly apparent facts, such damages are excluded, not because they are termed profits, but because they are, in fact, uncertain, remote, conjectural,

defendent upon too many contingencies to be capable of definite proof. Such elements of uncertainty do not appear to exist here.

In our view of the case, the judgment should be reversed and the cause remanded for a new trial. And it is accordingly so ordered. All concur.